

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00382-CR

MARCUS WAYNE BARNES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 63,158-E, Honorable Douglas Woodburn, Presiding

February 13, 2014

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Marcus Wayne Barnes was charged by indictment with unlawful possession of a firearm.[1]  After the trial court denied his pre-trial motion to suppress evidence, appellant entered an open plea of guilty and was sentenced to seven years in prison and fined $1,000.  Having reserved the right of appeal, appellant challenges the trial court's ruling on his motion to suppress through five issues.  We will affirm the judgment of the trial court.

---

[1] TEX. PENAL CODE ANN. § 46.04(a) (West 2011).

Background

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In so doing, we give "almost total deference to [the] trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012) (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (party prevailing in trial court is afforded "strongest legitimate view of the evidence and all reasonable inferences"). We review *de novo* questions of law and mixed questions of law and fact that do not depend on evaluation of credibility and demeanor. *Fienen v. State,* 390 S.W.3d 328, 335 (citing *Montanez v. State,* 195 S.W.3d 101, 106 (Tex. Crim. App. 2006)).

The evidence appellant sought to suppress consisted of a smoking pipe found on appellant's person and two pistols, a nine millimeter and a .38 caliber, both found in his vehicle by Amarillo police officers Clayton and Ogden.

The trial court made detailed findings of fact and conclusions of law. The sufficiency of the evidence supporting its findings of fact is not challenged on appeal. We quote parts of the court's findings.

2

"Richard McClain, a former Pampa police officer and narcotics agent and concealed gun holder, was left in control of the premises at 210 N. Lamar Amarillo by one of the residents, Lindsey McNett, after she moved out on February 25, 2011.[2] McClain was called to the residence by Lindsey's mother because [appellant] had been driving around threatening to kill McNett and her mother. While at the residence, McClain found drugs and drug paraphernalia. Earlier, McNett told McClain [appellant] possessed stolen weapons and McClain knew [appellant] was a convicted felon. Because of his discovery of contraband, his belief [appellant] was a convicted felon in possession of stolen weapons, and the threats [appellant] made, McClain called the police.

"The officers parked several houses away since this was a narcotics call and walked to the scene where they were met by the citizen-informant, Richard McClain.

"It was dark when the police arrived. McClain explained to the officers why he had called and advised them [appellant] was a convicted felon reported to have two stolen weapons in his car.

"McClain showed the police what he found in the home: drug paraphernalia and a hot box where [appellant] was growing marijuana. As the officers and McClain exited the house, a car pulled up out front on the street with a driver as the sole occupant. McClain told the officers the vehicle belonged to [appellant].

---

[2] The events described in the court's findings occurred on February 25, 2011. Testimony showed that before she moved out on that date, McNett and appellant resided at the house located at 210 N. Lamar.

"Officers Clayton and Ogden went to make contact with [appellant] as soon as possible for officer safety, since McClain had notified them [appellant] was a convicted felon with guns in his car and had been making threats to kill people.

"McClain watched nearby as the officers approached [appellant]. From where McClain was standing, he could see drugs in the back seat. McClain observed [appellant] moving around a bit in the car before he got out; once outside the car, [appellant] resisted and struggled with the officers as they tried to secure him.

"Officers Clayton and Ogden asked [appellant] to step out of the car, so he couldn't reach for a gun, but [appellant] did not get out when told. For officer safety reasons, both officers, wanted to do a *Terry* frisk and detain [appellant] to make sure there were no weapons. Officers Clayton and Ogden began handcuffing [appellant], but he moved and pulled his left hand free. The driver's door was open and they were concerned [appellant] could reach or lunge into the vehicle for something. After the officers got control of [appellant], they placed him in handcuffs.

"Officer Clayton did the *Terry* frisk and asked [appellant] if it was okay to check pockets, and [appellant] consented. Officer Ogden walked around the vehicle while Officer Clayton did the *Terry* frisk and heard [appellant's] consent. Officer Clayton pulled out a marijuana pipe and bullets from [appellant's] pockets and announced [appellant] was under arrest for possession of drug paraphernalia.

"Officer Ogden, when he walked around the vehicle, saw a clear glass Mason jar with a green leafy substance resting on the back left passenger seat; Ogden believed

4

the substance was marijuana. The marijuana was in plain view, visible from outside of the vehicle.

"After [appellant] was arrested for possession of drug paraphernalia, Officer Clayton secured him in the patrol car while Officer Ogden stayed with [appellant's] vehicle. The officers had contacted dispatch and confirmed [appellant] was a convicted felon. A decision to impound the vehicle was made by their supervisor, Sergeant Godfrey.

"Police procedure, as explained by Officer Ogden, is that if someone is arrested out of a vehicle like this, they typically inventory and impound it. Officers have an Amarillo Police Department form they fill out, as Officer Ogden did in this case. This standard police procedure is designed to protect the owner of the vehicle and to make sure the vehicle does not lose any property. Officer Ogden begins each inventory the same regardless of whether he has observed evidence or potential evidence in the vehicle.

"Officer Ogden found: (1) a black Hi-Point nine millimeter pistol in the center console, with a magazine containing nine cartridges, and a bullet in the chamber; (2) a black .38 caliber Bryco Arms semi-automatic pistol, with serial numbers ground off, in the glove compartment with a magazine containing seven cartridges, and a bullet in the chamber; and, (3) several boxes of ammunition for each weapon in the center console and on the back left passenger seat."

Analysis

By his first issue, appellant argues he was improperly seized because police did not have specific and articulable facts from which it could be reasonably inferred that he was "armed and dangerous." As a consequence, he concludes, all evidence must be suppressed as fruit of the poisonous tree.

Under the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may lawfully stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of probable cause. *State v. Arriaga,* 5 S.W.3d 804, 805 (Tex. App.—San Antonio 1999, pet. refused). An officer may also conduct a limited "pat down" of a person provided the officer reasonably believes the person is armed and dangerous. *State v. Sheppherd,* 271 S.W.3d 281, 287 (Tex. Crim. App. 2008) (citing *Terry,* 392 U.S. at 27-28). This is an objective determination made on the facts available to the officer at the time of the frisk. *Griffin v. State,* 215 S.W.3d 403, 409 (Tex. Crim. App. 2006). Facts giving rise to reasonable suspicion may be supplied by information from another person. *Brother v. State,* 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

An ordinary citizen who witnesses a crime and reports his observation to police as a matter of civic duty is sometimes referred to as a citizen-informer. *State v. Duarte,* 389 S.W.3d 349, 356 (Tex. Crim. App. 2012) (quoting 2 Wayne R. Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3 at 98 (4th ed. 2004)). Such a person is presumed to speak with the voice of honesty and accuracy. *Id.* A tip from a

citizen-informer placing himself in a position of accountability for the report deserves great weight. *Pipkin v. State,* 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.). A detention based on facts supplied by a citizen-informer, which are adequately corroborated by the detaining officer, does not violate the Fourth Amendment. *Brother,* 166 S.W.3d at 259. Corroboration does not require the officer personally observe the conduct giving rise to a reasonable suspicion that a crime is being, has been, or is about to be committed. *Id.* at 259 n.5 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Pipkin,* 114 S.W.3d at 654). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *Alabama v. White,* 496 U.S. 325, 330-31, 110 S. Ct. 2412, 110 L.Ed.2d 301 (1990); *Pipkin,* 114 S.W.3d at 654).

When officers arrived at the McNett house, McClain explained his belief that appellant was a convicted felon reportedly possessing two stolen weapons in his car. McClain showed officers drug paraphernalia in the house and a "hot box" where appellant was growing marijuana. McClain identified a vehicle stopping in front of the house as appellant's. As the trial court found, because they were told appellant was a convicted felon with guns in his car and was threatening to kill people, the officers "went to make contact with appellant as soon as possible." McClain stood nearby and watched the officers approach appellant.

By meeting the officers at the house, McClain placed himself in a position of accountability for his report to police. And his report was corroborated by the drug paraphernalia in the house, and was further corroborated when the man he identified as

7

appellant drove up to the house. *Brother,* 166 S.W.3d at 258-260. These facts were sufficient to give the officers a reasonable suspicion that some activity out of the ordinary was occurring or had occurred, appellant was connected with the unusual activity, and the unusual activity was related to crime. In light of the totality of circumstances, it was rational for the officers to initiate an investigative detention of appellant when he parked his vehicle in front of the house. We further find the facts known by the officers at the time of the frisk, "would warrant a reasonably cautious person to believe that the action taken was appropriate." *Griffin,* 215 S.W.3d at 409 (quoting *O'Hara v. State,* 27 S.W.3d 548, 551 (Tex. Crim. App. 2000)). Thus a frisk of appellant for weapons was justified. Appellant's first issue is overruled.

Relying in part on *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), appellant argues through his second and third issues that the warrantless search of his vehicle was improper because it did not come within either the automobile or search-incident-to-arrest exceptions to the Fourth Amendment's warrant requirement. Disagreeing with appellant, we resolve this issue under the automobile exception.[3]

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without

---

[3] We do not further discuss the facts found by the trial court potentially having a bearing on a search of the vehicle incident to appellant's arrest. *See Gant,* 556 U.S. at 343 (holding police may lawfully "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search . . . ." or when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle"). Nor do we discuss the possibility that facts known to the officers by the time of their search of the vehicle were sufficient to give them probable cause to believe it contained the firearms. *See Dixon v. State,* 206 S.W.3d 613 (Tex. Crim. App. 2006).

prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (citing *Katz v. United States,* 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Among the exceptions are a search incident to a lawful arrest and the search of an automobile based on probable cause to believe it contains evidence of a crime. *See McGee v. State,* 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (noting search-incident-to-arrest exception) and *Neal v. State,* 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Dahlem II v. State,* 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. refused) (citing *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970)) (noting automobile exception).

Under the automobile exception, if probable cause to search a vehicle exists, a showing of exigent circumstances authorizing a warrantless search is not required. *See Keehn v. State,* 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) ("Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband"); *Dahlem II,* 322 S.W.3d at 689 (citing *Chambers,* 399 U.S. at 48; *Powell v. State,* 898 S.W.2d 821, 827 (Tex. Crim. App. 1994)). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Dahlem II,* 322 S.W.3d at 689 (citing *Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex. Crim. App. 2007)). An officer's observation of contraband or evidence of a crime in plain view inside an automobile can

be used to establish probable cause to seize the contraband or evidence.  *Dahlem II,* 322 S.W.3d at 689 (citing *Colorado v. Bannister,* 449 U.S. 1, 4, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) (per curiam)); *cf. United States v. Sparks,* 291 F.3d 683, 690-91 (10th Cir. 2002) (collecting cases applying the plain view doctrine and automobile exception in combination to uphold warrantless vehicle searches and explaining "if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle").

In *Gant,* addressing searches incident to arrest, the Court rejected a reading of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that permitted a search of the entire passenger compartment of a vehicle regardless whether the compartment was actually accessible to the arrestee at the time of the search.  556 U.S. at 343.  But *Gant* did not diminish the reach of the automobile exception.  556 U.S. at 346-47 (discussing circumstances authorizing valid vehicle searches).  Thus an officer's observation of contraband or evidence of a crime in plain view inside an automobile can establish probable cause to conduct a warrantless search of the vehicle.  *See Dahlem II,* 322 S.W.3d at 689 (citing *Bannister,* 449 U.S. 1, 4) (items in plain view in vehicle matching description of stolen items and occupants fitting description of suspects provided probable cause to arrest and seize incriminating items without a warrant).  If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.  *Dahlem II,* 322 S.W.3d at 698 (citing *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).  *See also Gant,* 556

U.S. at 347 (stating "If there is probable cause to believe a vehicle contains evidence of criminal activity," *Ross,* 456 U.S. at 820-21, "authorizes a search of any area of the vehicle in which the evidence might be found"); *Wyoming v. Houghton,* 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (explaining that when "there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one").

Officer Ogden saw a clear glass jar containing a green leafy substance resting on the back seat of appellant's vehicle. The trial court found the substance was in plain view. Once the officer observed the marijuana in plain view probable cause attached to search the interior of the vehicle including compartments, such as the glove compartment and center console, where other contraband might have been stashed. *See United States v. Hall,* No. 09-4779, 397 Fed. Appx. 860, 2010 U.S. App. Lexis 21050, at *3-4 (4th Cir. Oct. 12, 2010) (per curiam, not designated for publication) (*Gant's* limitation on search-incident-to-arrest exception inapplicable because officers' observation of marijuana in plain view in convicted felon's vehicle gave them probable cause to search entire vehicle; accordingly, resulting discovery of unlawfully possessed firearm under seat was not Forth Amendment violation); *cf. Keehn,* 279 S.W.3d at 336 (holding once officers observed contraband in plain view inside vehicle automobile exception authorized their entry and seizure of item).

The search of the interior of appellant's vehicle properly came within the automobile exception to the Fourth Amendment's warrant requirement.[4] The trial court did not abuse its discretion by denying appellant's motion to suppress the firearms. Appellant's second and third issues are overruled.

By his fourth issue, appellant asserts officers improperly impounded and inventoried his vehicle. *See Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (inventory of lawfully seized vehicle as exception to Fourth Amendment warrant requirement). Consideration of the issue is not necessary to our disposition of the appeal, so we do not address it. *See* TEX. R. APP. P. 47.1 (requiring court of appeals to address every issue raised and necessary to final disposition of the appeal). Because we have determined the officers' search of the vehicle was permitted under the automobile exception, the correctness of the trial court's ruling on the motion to suppress does not rest on a proper impoundment and inventory of the vehicle. *See Miller v. State,* 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) (reviewing court will sustain the ruling of the trial court if it is correct under any theory of law applicable to the case).

By his fifth issue, appellant complains he was denied due process of law when the trial court failed to make findings of fact and conclusions of law supporting its order on his motion to suppress, as he had requested. After appellant filed his brief in this court, we abated the appeal on the State's motion and remanded for entry of findings of fact and conclusions of law. This was done and a supplemental clerk's record

---

[4] At the conclusion of the suppression hearing, in its rendition denying appellant's motion to suppress, the trial court explained, "I'm most persuaded by the testimony that the marijuana was seen in the back seat, which I think would authorize the search." We agree with the trial court.

containing the findings and conclusions was filed. Appellant was granted the opportunity to file an amended or supplemental brief after reviewing the findings and conclusions, but chose not to do so. Because the complaint appellant raises by this issue was cured before submission of the case, we dismiss the issue as moot.

## Conclusion

Having addressed every issue necessary to disposition of the appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice


Publish.