**Opinion issued June 26, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-13-00916-CR**

———————————

**HANCE ANTHONY ROGERS, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Court Case No. CR29974**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Hance Anthony Rogers, Jr., of possession of more than five but less than fifty pounds of marijuana[1] and assessed his punishment at two years' confinement, probated for ten years, and a $10,000 fine.

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2010).

In his sole issue on appeal, appellant argues that the trial court erred in denying his motion to suppress.

We affirm.

## Background

Appellant was charged with possession of between five and fifty pounds of marijuana. Appellant moved to suppress approximately twenty pounds of marijuana recovered by Trooper D. Schmidt with the Texas Department of Public Safety during a traffic stop. At the suppression hearing, Trooper Schmidt testified regarding his encounter with appellant.

Trooper Schmidt testified that he was "running stationary radar observing for [traffic] violations" in Liberty County[2] when he observed a silver Cadillac traveling eastbound in the left inside lane on U.S. Highway 90. The Cadillac was moving more slowly than other vehicles, and Trooper Schmidt observed another vehicle passing the Cadillac on the right in the outside lane. He stated that it is a violation of traffic laws to drive in the left lane without passing another vehicle and for a slower vehicle to fail to keep to the right. Trooper Schmidt followed the Cadillac to conduct a traffic stop for these violations. While he was following it, the Cadillac swerved into the right lane and then returned to the left lane without

---

[2] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Ninth District of Texas to this Court pursuant to its docket equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013).

using a turn signal. As Trooper Schmidt approached the vehicle, he observed appellant in the driver's seat and a second man, identified as Yousef Jefferson, in the front passenger seat.

Trooper Schmidt testified that he asked appellant to step to the back of the vehicle. He further testified that appellant was "very nervous, very jittery. His palms were sweating profusely." He stated that appellant had candy in his hand that he was trying to toss into his mouth, but "actually none of them were going into his mouth." However, appellant assumed that they "were and he would be, like, chewing on them like there was something in his mouth but there was not. He was very nervous, moving around a lot." When Trooper Schmidt asked appellant for his driver's license, appellant was not able to find it. He "fumbl[ed] through his wallet" and Trooper Schmidt could see appellant's state-issued identification card, but appellant kept "flapping through" the wallet until Trooper Schmidt pointed out where the card was located in the wallet. Appellant told Trooper Schmidt that he was going to Louisiana to visit his uncle, but he was not sure where in Louisiana his uncle lived, and appellant gave inconsistent answers regarding whether his uncle was related to his mother or father.

When Trooper Schmidt approached the vehicle to question the passenger, Jefferson, he observed a black duffle bag on the floorboard behind the driver's seat. He also observed "loose marijuana residue in the center console area

3

where . . . the gear shifter is." He also detected the smell of marijuana coming from the vehicle. Jefferson was "very cold, almost nonresponsive" and "did not want to make eye contact." Jefferson's answers to basic questions regarding where he and appellant were going and their relationship to each other were inconsistent with appellant's answers.

Trooper Schmidt testified, "Based off [appellant's] demeanor, Mr. Jefferson's demeanor, and observing the loose marijuana, the conflicting stories that I was getting from the two of them, I did believe criminal activity was afoot and that they could be possibly trafficking narcotics." He detained appellant and Jefferson and searched the vehicle. In the duffle bag he discovered two packages of a green, leafy substance that he believed was marijuana. He subsequently placed appellant under arrest.

On cross-examination, appellant questioned Trooper Schmidt about the marijuana residue he observed in the console area. Trooper Schmidt stated that it was in plain view, but he did not take any pictures of it. Trooper Schmidt agreed that he did not have any proof of the existence of the loose marijuana in the console of the car or of the odor of marijuana coming from the vehicle other than his testimony. Trooper Schmidt was the only witness at the suppression hearing.

The trial court made findings of fact and conclusions of law on the record. The trial court found that Trooper Schmidt pulled appellant over after observing

4

him violate one or more traffic laws, that he observed appellant exhibiting "an extreme degree of nervous behavior," and that appellant and Jefferson gave inconsistent answers to various questions. The trial court further found

> that the trooper while on the exterior of the vehicle and speaking with Mr. Jefferson observed what he believed to be based upon his knowledge, training, and experience a green leafy substance which he believed based on his knowledge, training, and experience to be marijuana within the interior of the vehicle as testified to on the console and in that general area.
> Furthermore, the trooper noticed a strong smell of marijuana emanating from the vehicle, a strong smell which he believed based on his knowledge, his training, and experience to be the odor of marijuana.

The trial court concluded that Trooper Schmidt had reasonable suspicion to believe appellant violated one or more traffic laws and was justified in conducting a traffic stop. The trial court further concluded "that based upon the demeanor of the defendant, the passenger, the inconsistent statements, the view of marijuana in the vehicle that was in plain view, and the odor of marijuana, that Trooper Schmidt had probable cause to believe that criminal activity was afoot." The trial court concluded that "the resulting search of the vehicle was lawful, and the evidence seized is admissible as evidence in the trial of this case."

The jury convicted appellant of possession of marijuana and assessed his punishment at two years' confinement, probated for ten years, and a $10,000 fine. This appeal followed.

**Motion to Suppress**

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress the marijuana recovered from his vehicle.

## A.     Standard of Review

"In reviewing a trial court's ruling on a motion to suppress, appellate courts must view the evidence in the light most favorable to the trial court's ruling." *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).  When, as here, a trial court makes explicit fact findings, the appellate court determines whether the evidence viewed in the light most favorable to the trial court's ruling supports the fact findings.  *See id.*; *see also State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (holding that trial court's findings of fact and conclusions of law are sufficient if they are "recorded in some way, whether written out and filed by the trial court, or stated on the record at the hearing").

We review motions to suppress pursuant to a bifurcated standard under which the trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.  *Johnson*, 414 S.W.3d at 192.  However, for questions of law or mixed questions of law and fact that do not depend on the evaluation of credibility and demeanor, we review the trial court's ruling de novo.  *Id.*  At a suppression hearing, the trial court "is the sole trier of fact and judge of the

6

credibility of the witnesses and the weight to be given their testimony." *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). The trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

"The Fourth Amendment to the United States Constitution permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *Johnson*, 414 S.W.3d at 191; *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 28, 88 S. Ct. 1868 (1968)). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Id.* "A reasonable-suspicion determination is made by considering the totality of the circumstances." *Id.* at 492–93.

Furthermore, the law has recognized an exception to the Fourth Amendment's prohibition of unreasonable searches and seizures for the search of an automobile upon probable cause to believe it contains evidence of a crime. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Barnes v. State*, 424 S.W.3d 218, 224 (Tex. App.—Amarillo 2014, no pet.). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *Neal*, 256 S.W.3d at 282. If this exception applies, then the police may search "every part of the vehicle and its contents that may conceal the object of the search." *Id.* "[A]n officer's observation of contraband or evidence of a crime in plain view inside an automobile can establish probable cause to conduct a warrantless search of the vehicle." *Barnes*, 424 S.W.3d at 225; *see also Dickey v. State*, 96 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that odor of marijuana coming from car alone constitutes probable cause).

## B.    Analysis

Here, Trooper Schmidt testified that he initiated a traffic stop after observing appellant violate several traffic laws, including failing to maintain a single lane of traffic. During the traffic stop, Trooper Schmidt observed appellant act in a nervous, suspicious manner. Trooper Schmidt testified that appellant and Jefferson gave inconsistent answers to his questions regarding their destination and

8

relationship. Furthermore, Trooper Schmidt testified that he observed "marijuana residue" in the center console area of the vehicle and detected the odor of marijuana coming from the vehicle.

Appellant argues that the State did not adequately establish probable cause to search the vehicle because Trooper Schmidt "took no photographs of the [m]arijuana residue, nor did he collect any of the [m]arijuana residue as evidence." However, appellant does not cite, nor could we discover, any authority requiring a particular form of evidence to establish probable cause. Rather, an officer's observation of contraband in plain view may support a finding of probable cause. *See Barnes*, 424 S.W.3d at 225 (holding that officer's testimony that he saw marijuana on back seat of vehicle in plain view supported finding of probable cause to search vehicle); *see also Dickey*, 96 S.W.3d at 613 (holding that odor of marijuana coming from car alone constitutes probable cause).

Appellant cross-examined Trooper Schmidt during the suppression hearing regarding the existence of any other evidence, such as photographs or a sample of the residue, to support his testimony that he saw and smelled marijuana while questioning appellant and Jefferson. Trooper Schmidt agreed that the only evidence of the existence of the loose marijuana residue on the console and the odor of marijuana coming from the vehicle was his own testimony. The trial court found that Trooper Schmidt observed marijuana in plain sight in the vehicle and

detected the odor of marijuana coming from the vehicle, implicitly finding that Trooper Schmidt's testimony was credible and believable. The trial court, as the fact finder, was the sole trier of fact and judge of Trooper Schmidt's credibility and the weight to be given to his testimony, and we afford almost total deference to the trial court's determinations of historical facts that rely on credibility when supported by the record, as they are here. *See Johnson*, 414 S.W.3d at 192; *Wiede*, 214 S.W.3d at 24–25. Trooper Schmidt's testimony, viewed in the light most favorable to the trial court's ruling, supports the trial court's fact findings. *See Johnson*, 414 S.W.3d at 192.

Thus, Trooper Schmidt provided specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that appellant was or had been engaged in criminal activity, and, therefore, he had a reasonable suspicion sufficient to justify his detention of appellant. *See Ford*, 158 S.W.3d at 492. Furthermore, the presence of marijuana in plain sight and the smell of marijuana coming from the vehicle were sufficient to provide probable cause to search the vehicle appellant was driving at the time he was detained. *See Neal*, 256 S.W.3d at 282; *Barnes*, 424 S.W.3d at 225; *Dickey*, 96 S.W.3d at 613.

We conclude that the trial court did not err in denying appellant's motion to suppress the evidence of the marijuana recovered from his vehicle.

**Conclusion**

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11