**AFFIRM; and Opinion Filed February 9, 2015.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00144-CR

**RICHARD CRUZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-11-41612-L**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Lang-Miers, and Justice Fillmore
Opinion by Justice Fillmore

After the trial court denied his motion to suppress evidence, Richard Cruz pleaded guilty to possession of a controlled substance. Pursuant to a plea bargain agreement, the trial court assessed punishment of two years' confinement in a state jail facility. In one issue, Cruz contends the trial court erred by denying his motion to suppress all evidence found during a warrantless search of his vehicle. We affirm the trial court's judgment.

### Background

Mesquite Police Officer Ian Purdue saw Cruz commit a traffic violation, specifically, failing to signal the intent to turn prior to 100 feet of an intersection, and initiated a traffic stop. Purdue requested that both Cruz and the front seat passenger, Christopher Cruz, identify themselves. Purdue ran an "NCIC" check on both Cruz and Christopher and discovered there were multiple warrants from the City of Mesquite for Christopher's arrest. Purdue began the

"confirmation process" on the warrants and requested that a backup officer come to the scene. According to Purdue, for purposes of officer safety, standard protocol is to request a backup officer when an arrest is being made.

While Purdue was waiting for the warrants to be confirmed and for the backup officer to arrive, he requested that Cruz get out of the car. Purdue asked Cruz a number of questions, including a series of questions about whether there was contraband in the car. Cruz responded "no" to Purdue's questions about whether there was cocaine, heroin, methamphetamine, or marijuana in the car. However, when Purdue asked if there was a gun in the car, Cruz responded, "not that I know of." Based on his training and experience, Purdue suspected this deviation in Cruz's answer indicated deception.

After five or ten minutes, the warrants were confirmed and Purdue's backup officer arrived. The backup officer stayed with Cruz at the rear of the car while Purdue approached the front passenger door and asked Christopher to get out of the car. As Christopher did so, he dropped his cell phone on the ground. Christopher tried to pick up the cell phone, but Purdue told Christopher that he would take care of it. Purdue handcuffed and searched Christopher. Purdue then bent down to pick up the cell phone, intending to place it onto the front seat of the car. When Purdue bent down, he saw what he believed to be the butt of a pistol sticking out from underneath the front passenger seat. According to Perdue, the passenger door was open and, from where he was standing, he could plainly see the butt of the pistol.

Purdue placed Christopher in the back of the patrol car and returned to Cruz's car to confirm he saw the butt of a pistol. While standing outside the car, Purdue confirmed he had seen the butt of a pistol and also noticed a large amount of marijuana seeds and stems on the floorboard and front passenger seat of the car. Purdue also smelled marijuana.

–2–

After removing a small child from the back seat of the car, Purdue searched the car. He found a gun underneath the front passenger seat, some loose marijuana in the front passenger seat, and a small baggie of what he believed to be cocaine in a magnetic "hide-away-key" under the front driver's seat. Purdue testified he did not have consent to search the car and the search was not an inventory search. Rather, he searched the car after he observed contraband.

Cruz was charged with possession of the cocaine. He moved to suppress all evidence found during the search of the car on grounds Purdue had neither reasonable suspicion to stop him nor probable cause to arrest him for failing to signal his intent to make the turn. Following the hearing on the motion to suppress, the trial court made written findings of fact that (1) without entering the car, Purdue was able to confirm there was a gun in the car, saw marijuana, as well as marijuana seeds and stems, in the car, and smelled marijuana emanating from the car, and (2) Purdue's search of the car occurred after he saw contraband, consisting of a gun and marijuana, in plain view. The trial court concluded the search was a "valid search" and denied the motion to suppress.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and

demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes specific findings of fact, we determine whether the evidence supports those findings. *Valtierra*, 310 S.W.3d at 447. As a general rule, we view the evidence in the light most favorable to the trial court's ruling and will reverse the judgment "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran* 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Story*, 445 S.W.3d at 732; *Turrubiate*, 399 S.W.3d at 150.

## Analysis

In his sole issue on appeal, Cruz contends the trial court improperly applied the plain view doctrine in denying the motion to suppress. Cruz specifically asserts the pistol was not in plain view and no exception to the Fourth Amendment's warrant requirement allowed Purdue to search the entire vehicle.

The Fourth Amendment guarantees that people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A search conducted without a warrant issued upon probable cause is per se unreasonable unless it falls within one of the well-established exceptions to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

–4–

A person must have a legitimate expectation of privacy in the invaded space in order to claim the protection of the Fourth Amendment. *Minnesota v. Carter*, 525 U.S. 83, 88 (1988) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). However, if an article is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Horton v. California*, 496 U.S. 128, 133 (1990); *Walter*, 28 S.W.3d at 541; *see also State v. Dobbs*, 323 S.W.3d 184, 188 n.11 (Tex. Crim. App. 2010) ("An investigation that does not impinge upon a defendant's legitimate privacy or possessory interest does not implicate Fourth Amendment protections."). A seizure of an article is lawful under the plain view doctrine if (1) the police officer is lawfully where the article can be "plainly viewed"; (2) the incriminating character of the article in plain view is immediately apparent to the officer; and (3) the officer has the right to access the article. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009); *see also Horton*, 496 U.S. at 136–37; *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013).

Cruz first argues the gun was not in plain view because Perdue had to look under the front passenger seat of the car to see it. We construe this argument as a challenge to whether Perdue was lawfully where the butt of the gun could be plainly viewed.[1] In determining whether the officer had a right to be where he was, we look at whether the officer violated the Fourth Amendment in arriving at the place from which the article could be plainly viewed. *Walter*, 28 S.W.3d at 541. "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983) (plurality op.) (internal citations omitted); *see also Walter*, 28 S.W.3d at 544. An officer looking inside a

---

[1] Cruz does not contend on appeal that his rights under the Fourth Amendment were violated by either the initial traffic stop or by the length of the stop. Rather, he contends Perdue could not permissibly look under the front passenger seat of the car.

vehicle from a lawful vantage point does not implicate Fourth Amendment protections. *Walter*, 28 S.W.3d at 543–44; *see also Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Further, whether the officer changed his position or bent down at an angle to change his view of the interior of the vehicle is irrelevant to the Fourth Amendment analysis. *Brown*, 460 U.S. at 740; *Cummings v. State*, 727 S.W.2d 348, 350 (Tex. App.—Houston [1st Dist.] 1987, pet ref'd).

Perdue testified the passenger door of the car was open and, when he bent down to retrieve Christopher's cell phone, he saw the butt of the gun protruding from under the front passenger seat of the car. He also saw, while outside the car, marijuana on the front passenger seat and marijuana seeds and stems in the floorboard. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court could have reasonably determined the butt of the pistol, the marijuana, and the marijuana seeds and stems were in plain view. *See Walter*, 28 S.W.3d at 544 (noting police officer had every right, just like any private citizen, to stand on park property and look into vehicle whose doors were wide open).

Cruz next argues that, even if the plain view doctrine applies to the pistol, the marijuana, and the marijuana seeds and stems, Perdue was not permitted to search the entire vehicle. In the absence of exigent circumstances, the plain view doctrine "can never justify a search and seizure without a warrant when law enforcement officials have no lawful right to access an object." *Keehn*, 279 S.W.3d at 335. However, the automobile exception to the warrant requirement provides that a law enforcement officer may conduct a warrantless search of a motor vehicle if it is readily mobile and the officer has probable cause to believe the vehicle contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *Keehn*, 279 S.W.3d at 335; *see also Arizona v. Gant*, 556 U.S. 332, 346–47 (2009) (noting automobile exception is recognized exception to warrant requirement); *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *8

(Tex. Crim. App. Nov. 26, 2014) (same). Probable cause to search exists when reasonably trustworthy facts and circumstances within the officer's knowledge would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Guiterrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2009)). The officer may rely on training and experience to draw inferences and make deductions as to the nature of the item seen. *Hill v. State*, 303 S.W.3d 863, 873–74 (Tex. App.—Fort Worth 2009, pet. ef'd) (citing *Nichols v. State*, 886 S.W.2d 324, 325–26 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)). An officer's observation of contraband or evidence of a crime in plain view inside a vehicle can be used to establish probable cause to seize the contraband or evidence. *Dahlem, II v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Colorado v. Bannister*, 449 U.S. 1, 4 (1980) (per curiam)).[2]

The trial court specifically found that, without entering the car, Perdue smelled marijuana emanating from the car and saw marijuana inside the car. Either seeing marijuana in plain view in an automobile or smelling the odor of marijuana emanating from an automobile is sufficient to constitute probable cause to search the vehicle. *Miller v. State*, 608 S.W.2d 684, 685 (Tex. Crim. App. [Panel Op.] 1980) (smelling odor of marijuana emanating from car and seeing marijuana seeds in plain view in car was sufficient probable cause to allow search of entire vehicle); *Moulden v. State*, 576 S.W.2d 817, 820 (Tex. Crim. App. [Panel Op.] 1978) (detecting odor of burnt marijuana provided probable cause to search entire vehicle); *Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.—Amarillo 2014, no pet.) (seeing marijuana in plain view in car was sufficient probable cause to allow search of entire vehicle); *see also Parker v. State*, 206 S.W.3d

---

[2] *See also Adkins v. State*, No. 01-13-00627-CR, 2014 WL 5465701, at *5 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op., not designated for publication).

593, 597 n.11 (Tex. Crim. App. 2006); *Sheldon v. State*, 510 S.W.2d 936, 938 (Tex Crim. App. 1974). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982); *see also Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008). Accordingly, Perdue had probable cause to search every part of the vehicle that might conceal marijuana, including the "hide-away-key" underneath the front driver's seat where the cocaine was found. *See Miller*, 608 S.W.2d at 685; *Moulden*, 576 S.W.2d at 820; *see also Ross*, 456 U.S. at 825; *Neal*, 256 S.W.3d at 282.

We conclude the trial court did not err by denying Cruz's motion to suppress. We resolve Cruz's issue against him and affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140144F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD CRUZ, Appellant

No. 05-14-00144-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas,
Trial Court Cause No. F11-41612-L.
Opinion delivered by Justice Fillmore, Chief Justice Wright and Justice Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of February, 2015.