

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-13-00323-CR

___

JEREMIAH MICHAEL SCOTT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

___

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 61,447-E, Honorable Douglas Woodburn, Presiding

___

March 3, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

A jury in Potter County convicted appellant Jeremiah Michael Scott of possession of at least four but fewer than four hundred grams of the controlled substance methylenedioxymethamphetamine.[1,2] The court assessed punishment of twenty years'

___

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(d) (West 2010). The offense is a second degree felony punishable for any term of not more than twenty years or less than two years and a fine not to exceed $10,000. TEX. PEN. CODE ANN. § 12.33 (West 2011).

confinement in prison and a fine of $10,000. Through a single issue appellant contends his court-appointed trial counsel rendered ineffective assistance. Finding the issue without merit, we will affirm the judgment of the trial court.

## Background

Trial was in June 2011. Before jury selection began, appellant's trial counsel orally moved for a continuance because a witness, Tameka Michelle Walter, was at the time incarcerated in Oklahoma City, Oklahoma. The prosecutor announced he too would like Walter to appear at the trial and would have subpoenaed her if he had known her whereabouts. After making further inquiry, the court denied the motion and trial proceeded.

After the jury was selected and appellant plead not guilty, the court recessed for lunch. Appellant was not in custody, and outside the jury's presence he asked the court if he might have lunch with his family. He added, "That's all I was wanting to know because--I mean, I'm not trying to run from y'all or none of that because that--because I drove 300 miles up here." The court instructed him to return by 12:45 p.m. when trial was to resume. Appellant did not return as directed. At 1:20 p.m. counsel told the court outside the jury's presence he had "no idea" where his client was. The court then returned the jury and delivered the following explanation:

> For the record, I had informed the Defendant, Mr. Scott, to return here at 12:45. He left--apparently left the courthouse with his family and he has not returned. And so we will have to proceed on with the trial since he's already pled on the document[.]

---

[2] Methylenedioxymethamphetamine is commonly known as "MDMA" or "ecstasy. *Alford v. State,* 358 S.W.3d 647, 651 (Tex. Crim. App. 2012).

Appellant did not return for the remainder of his trial. The State presented its case and appellant called no witnesses. After returning a guilty verdict the jury was discharged. Punishment was tried to the court in a brief hearing. The State re-tendered its guilt-innocence evidence and rested. Counsel for appellant offered no witnesses or evidence. The court pronounced the noted sentence.

Appellant was later found in the custody of the Oklahoma Department of Corrections and returned to Potter County. New counsel was appointed and in September 2013, the trial court pronounced sentence in appellant's presence.[3] After expressing the sentence the court commented to appellant, "A very foolish decision on your part."

Analysis

Appellant's ineffective assistance complaint arises from a litany of asserted unprofessional acts by counsel occurring prior to trial, during voir dire, and throughout the guilt-innocence and punishment phases of trial.

Analysis of an ineffective assistance of counsel claim is conducted under the standard set out in the United States Supreme Court's opinion in *Strickland v. Washington.* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Our review of counsel's performance is highly deferential and a strong presumption exists that counsel's conduct fell within a wide range of reasonable professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Strickland,* 466 U.S. at

---

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42.14(b) (West Supp. 2014) (stating circumstances in a felony case under which sentence may be rendered in defendant's absence).

689 (noting there are countless ways to provide effective assistance in any given case). To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly rooted in the record. *Thompson v. State,* 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999).

The Court in *Strickland* established a two-pronged test for analyzing a claim of ineffective assistance of counsel. Reversal requires a defendant to demonstrate counsel's representation fell below an objective standard of reasonableness and the deficient performance prejudiced the defendant. 466 U.S. at 687; *see Hernandez v. State,* 726 S.W.2d 53, 54-55 (Tex. Crim. App. 1986) (applying *Strickland* standards under Texas Constitution).

The first prong of the *Strickland* test requires an appellant to show counsel made such serious errors that he did not function as the counsel guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Appellant must show that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy. *Id.* at 689-90. Absent evidence of counsel's reasons for conduct challenged on appeal, we will not conclude the conduct constituted deficient performance unless it was so outrageous that no competent attorney would have engaged in it. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Under the second prong, an appellant must show that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The standard for judging prejudice requires an appellant to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. As with the performance prong, "the question of prejudice turns on the facts that the record shows." *Mitchell v. State,* 68 S.W.3d 640, 643 (Tex. Crim. App. 2002).

"There is no need for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697. Thus "it is not necessary to determine whether trial counsel's representation was deficient if appellant cannot satisfy the second *Strickland* prong." *My Thi Tieu v. State,* 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. refused). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697.

Before stating a conclusion, we will set out the deficiencies appellant sees in his attorney's representation, and describe what the record shows.

Pre-trial

According to appellant, his counsel failed to investigate the case adequately. It is trial counsel's duty to independently investigate the facts of the case. *Strickland,* 466 U.S. at 691 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed

5

for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Appellant's complaint relies on the content of counsel's fee request voucher, which appellant claims demonstrates counsel did not spend any time preparing for trial. The document was never admitted into evidence at a hearing before the trial court nor does the record contain an explanation of its contents from counsel. Nevertheless, the document appears in the clerk's record and indicates counsel performed services for appellant from April 15, 2010, until June 15, 2011. The voucher also reflects counsel requested, and received, a flat fee of $1,000 as compensation. It contains no itemization of the services he rendered for appellant.

Appellant contends counsel did not meet with him until two days before trial and did not inform him the case was set for trial on June 8, 2011. After counsel told the court he learned of Tameka Walter's location on the previous day, the court undertook to understand how long appellant had known of her location. During their exchange on that subject, appellant told the court he had contacted his counsel "last Thursday"[4] and later told the court he had "only known [counsel] for two days." Appellant also told the court June 8 was the second court date of which he was aware, and he "didn't know [he] was coming for trial today basically." How appellant obtained his knowledge of court dates is not shown, and the record contains no further elaboration on appellant's statements to the court. The court did not seek a response from counsel, and he offered none.

---

[4] Trial was on Wednesday June 8 meaning the previous Thursday was June 2.

Appellant asserts counsel made no effort to secure the testimony of Walter, who appellant describes as his "lone witness." Nor, he continues, did counsel file a written motion for continuance to obtain Walter's testimony. When the court asked him, appellant told the court he learned of Walter's incarceration the previous week.

Nothing in the record shows what testimony favorable to appellant Walter was prepared to offer. *See Perez v. State,* 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (explaining, "the failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony" (internal quotation marks omitted)). The State apparently believed Walter's testimony would aid its case. At any rate, the record does not tell us how Walter would have testified had she been present.

On appeal, appellant contends his sole available defense was the suppression of evidence arising from the discovery of the controlled substance in his vehicle. Counsel did not file a motion to suppress nor did he object to admission of the evidence of the contraband at trial. Trial testimony from two Amarillo police officers, Leake and Thurman, sets out the circumstances of their seizure of the controlled substance, which was contained in green- and orange-colored pills.

The two patrol officers were dispatched to investigate a 9-1-1 call. It was after 9:00 p.m. and according to Leake it was dark. The dispatcher reported a female caller on an open line who was able to answer only "yes" and "no" questions. The officers drove to the estimated address of the call in separate vehicles.

7

Near the location the officers noticed a parked vehicle, a Chevrolet Tahoe, occupied by a male and female, later identified as appellant and Walter. Appellant was seated in the driver's seat and Walter, the passenger seat. At the passenger side, Leake asked Walter to lower the window. She was "sunken down" in the seat, avoided eye contact, and was "real quiet." The pair appeared to match a description given by dispatch in a subsequent broadcast.

Thurman went to the driver's side, and asked appellant to exit the vehicle. Appellant responded with a "real quick move" toward the vehicle's center console. Believing appellant may have been reaching for a weapon, the officers drew their weapons and Leake commanded appellant to show his hands. As directed, appellant exited the vehicle and was handcuffed. Thurman placed him in a patrol vehicle. Appellant denied the officers permission to search his vehicle.

After Walter was placed in the other patrol car,[5] Leake searched the location on the driver's side of the passenger compartment to which appellant had moved his hand. The officer testified he was looking for a weapon, but did not find a weapon or see other contraband.

When Thurman returned to the vehicle, through the open driver's door he saw "what appeared to be two or three small green pills in the floorboard." He then noticed a larger clear plastic bag containing green-colored and orange-colored pills. He reported to Leake that he found drugs in the car. After Leake retrieved a camera, he also saw the two green pills on the driver's side floorboard. As he collected the pills he noticed a

---

[5] Officer Leake testified she was, in his opinion, "high on Ecstasy."

bag of similar pills under the driver's seat. The officers believed the pills were narcotics. Later analysis by the Department of Public Safety crime lab proved they were ecstasy.

Thurman placed appellant under arrest and transported him to the police station. According to his testimony, in the patrol vehicle and without inquiry by Thurman, appellant admitted the ecstasy was his, and came from a "party pack" he purchased at an Amarillo restaurant.

Voir Dire

Appellant finds counsel's voir dire of the jury panel deficient in several respects. He complains it was "extremely short," limited to inquiry of biases concerning possession of controlled substances, and without pertinent follow-up questions. Further, according to appellant, counsel did not touch on the rights of the accused, including remaining silent, was rude to appellant in the panel's presence, did not "personalize" him, and did not remove any panelists for cause.

The State accurately points out that the prosecutor's voir dire addressed the rights of the accused, including the right to remain silent, and that the trial court also reiterated the right to remain silent and included it in the jury charge. From the trial record, it is not possible to ascertain what information counsel gleaned from the State's questioning and how the panel's answers to the State's questions affected counsel's jury-selection strategy. However, in his voir dire, after introducing appellant to the panel, counsel did explain, "I'm not going to take as long as the prosecutor because he said most of everything that I was going to say." And he concluded by telling the panel, "I think that I've gotten the information that I need and he's got the information that he

9

needs.  So we'll pick our jury and be ready to go." While questioning the panel, counsel engendered their laughter with beginning and ending comments about his bow tie and role as a defense attorney.  Obtaining a show of hands to an inquiry concerning possession of controlled substances, counsel individually questioned seven panel members.  As appellant points out counsel did not inquire about the impartiality of these individuals.  But the record reflects counsel exercised peremptory challenges to strike the seven plus two others and appellant does not argue an objectionable panel member was seated on the jury.  Four jurors were struck for cause and appellant does not argue that counsel erroneously failed to challenge others for cause.

Guilt-Innocence and Punishment Phases of Trial

Appellant condemns counsel's trial performance with a broad brush.  He criticizes counsel for not attempting to limit the judge's explanation to the jury of appellant's absence following the noon recess.  He adds that counsel did not object to evidence at trial, including the drugs and appellant's incriminating statement to Thurman, and was ineffective on cross-examination.  Finally he criticizes counsel's closing argument for questioning the sufficiency of the evidence of possession in light of the officer's testimony appellant admitted the drugs were his.

The record at guilt-innocence indicates counsel cross-examined three of the State's five witnesses.  He had no questions for a fingerprint expert, who testified he found no fingerprints, and the Department of Public Safety chemist.  Counsel called no witnesses on behalf of appellant.  At the close of evidence, counsel moved for a directed verdict on jurisdictional grounds.  It was overruled.  He lodged an objection to

10

the charge which was implicitly overruled. He argued to the jury a lack of evidence that appellant intentionally and knowingly possessed the ecstasy. On rebuttal the prosecutor pointed out that officer Thurman testified to appellant's admission that the pills were his.

Punishment was tried to the bench. The State re-tendered its evidence from guilt-innocence and rested. Counsel presented no evidence for appellant. Of course appellant was not available to testify or otherwise assist in the presentation of his punishment case. The court assessed the maximum sentence, twenty years' confinement and a fine of $10,000.

Application

Appellant's argument on appeal is little more than his present counsel's critique of trial counsel's representation. "The object of an ineffectiveness claim is not to grade counsel's performance." *Strickland,* 466 U.S. at 697. Critical to the ineffectiveness determination, we are not shown how trial counsel's representation prejudiced appellant's defense.

Appellant's primary challenge to his conviction is his counsel's failure to attempt suppression of the controlled substance and his incriminating admission to Thurman. To demonstrate ineffective assistance of counsel from a failure to object to the admission of evidence, an appellant must show the trial court would have committed error in overruling such an objection. *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Vaughn v. State,* 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)). In like manner, a claim of ineffective assistance based on counsel's failure to file a

motion to suppress cannot be sustained absent proof that the motion would have been granted. *Chapa v. State,* No. 04-02-00346-CR, 2003 Tex. App. LEXIS 2091, at *10 (Tex. App.—San Antonio Mar. 12, 2003, pet. refused) (mem. op., not designated for publication) (citing *Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (per curiam)).  As noted, most of the record regarding seizure of the incriminating evidence comes from the officers' testimony.  The testimony appears direct and consistent, and it appears likely to us the trial court would have found it credible.  By their testimony, the officers were dispatched at night, after a 9-1-1 call, to investigate possible domestic violence and approached a parked vehicle occupied by a male and female.  The officers got little information from their conversation with Walter.  When an officer approached appellant on the driver's side and asked him to step out of the vehicle, appellant made a quick movement toward the console, causing both officers to draw their weapons.  As the result of that action, appellant was handcuffed and placed in a patrol car.  An officer looked for a weapon but saw none.  *See, e.g., Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (search of vehicle for weapon reasonable under *Terry v. Ohio*[6] principles).  The vehicle's door remained open, and from his position standing in the street at the open door, an officer saw the two green ecstasy pills on the floorboard.  His observation of the two pills led to a further search and discovery of the bag of similar pills under the driver's seat.  Based on this record, counsel could have concluded that an effort to suppress the pills found in the car would not have been meritorious.  *See Keehn v. State,* 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (automobile exception authorizes warrantless search of vehicle if it is readily mobile and

---

[6] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

there is probable cause to believe it contains contraband); *Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000) (discussing application of plain view doctrine); *Barnes v. State,* 424 S.W.3d 218, 225 (Tex. App.—Amarillo 2014, no pet.) (discussing automobile exception and cases).

The record does not establish prejudicial error by counsel in the conduct of pre-trial matters and voir dire. Not securing a continuance for the sake of presenting Walter's testimony may well have worked to appellant's benefit. The State apparently wanted her testimony but was unable to locate her. At the least, the record does not show how Walter's absence harmed the presentation of appellant's case on guilt or punishment. We have already noted counsel reasonably could have considered moving to suppress the drug and appellant's alleged admission of possession to an officer would be fruitless. Otherwise, we are not shown with argument and authorities the proper objections counsel failed to make and how his cross-examination might otherwise have diminished the force of the State's case. Counsel's closing argument contained a possible lapse. But we lack the assistance of counsel's explanation. *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (noting an appellate court should ordinarily not denounce trial counsel as ineffective without a record affording counsel the opportunity to explain his actions). As for appellant's sentence, it was within the lawful range. The trial court as factfinder may have recalled appellant's comment before the fateful lunch break, "I'm not trying to run from y'all or none of that . . . ." Disregarding the impact of appellant's choice to absent himself from the trial may have had on the effectiveness of counsel's representation, on the record

presented, we do not find appellant has discharged his burden under *Strickland's* prejudice prong.

## Conclusion

We overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.