

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00159-CR

———————————————

VANDAMME JEANTY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. F16-887-158

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Vandamme Jeanty, appearing pro se, appeals his conviction for fraudulent use or possession of identifying information, a state-jail-felony offense. We will affirm.

## I. Background

In 2016, a grand jury indicted Jeanty for fraudulently obtaining or possessing Mary Stella's identifying information. At trial, Mary,[1] a Florida attorney, recognized Jeanty as having "lurk[ed] and follow[ed]" her during her representation of Bank of America in litigation against Jeanty's acquaintance Carline Merisier. Mary testified that Jeanty had been "mentioned prominently" throughout Merisier's suit against Bank of America.

Merisier is also involved in the instant case. She and Jeanty were accused in the instant proceedings of using Mary's information to apply online for and successfully open a $20,000 line of credit with Nebraska Furniture Mart. The pair was arrested after they used that line of credit to purchase a high-end vacuum and to attempt to purchase two expensive televisions.

A jury convicted Jeanty and assessed his punishment at eighteen months' incarceration and a $3,968.42 fine. The trial court sentenced him accordingly. This appeal followed.

---

[1]Mary Stella is the victim's married name; her maiden name is Mary Pascal. For clarity, we refer to her by her first name.

## II. Discussion

In fifteen often interrelated points, Jeanty argues, among other things, that the trial court erred by granting the State's motion to amend the indictment; that the evidence was legally insufficient to support Jeanty's conviction; that the jury charge was defective in various respects; that the trial court erred by admitting certain of the State's evidence; that the trial court erred by submitting the State's theory of party liability to the jury; and that the cumulative effect of all these errors warrants reversal of Jeanty's conviction. We will address each of these points—all of which lack merit—in turn below.

### A.  <u>Point One</u>: The Amendment of the Indictment Was Proper

In his first point, Jeanty argues that the trial court erred by granting the State's motion to amend the indictment. Because it presents a question of law, we review the trial court's decision to permit amendment of the indictment de novo. *See Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010).

#### 1.  The Indictment's Amendment

To convict a defendant of fraudulent use or possession of identifying information, the State must prove beyond a reasonable doubt that the defendant "(1) obtain[ed], possesse[d], transfer[red], or use[d] an item of identifying information of another person; (2) without the other person's consent; and (3) with the intent to harm or defraud." *Sanchez v. State*, 536 S.W.3d 919, 921 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing Tex. Penal Code Ann. § 32.51(b)(1)). "[T]he phrase 'item

3

of identifying information' refers to any single piece of personal, identifying information enumerated in the definition of 'identifying information' that alone or in conjunction with other information identifies a person . . . ." *Cortez v. State*, 469 S.W.3d 593, 602 (Tex. Crim. App. 2015). Among these enumerated examples are a person's "name and date of birth" and a person's "social security number or other government-issued identification number." Tex. Penal Code Ann. § 32.51(a)(1)(A), (E).

> The grand jury's initial indictment read as follows:

> THE GRAND JURORS, in and for the County of Denton, State of Texas, duly organized, impaneled, and sworn as such, at the January Term, A.D., 2016, of the District Court of the 362nd Judicial District in and for said county and state, upon their oaths, present in and to said Court that VANDAMME JEANTY, who is hereinafter styled defendant, on or about the 9th day of November, 2015[,] and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there, with intent to harm or defraud another, and without the consent of Mary Stella, obtain or possess less than five (5) items of identifying information of Mary Stella, to-wit: name, date of birth, or social security number; against the peace and dignity of the State.

Because the indictment deviated from the language of Section 32.51 of the Penal Code in certain respects—including listing "name" and "date of birth" as separate "item[s] of identifying information"—the State filed a motion to amend the indictment as follows so that it would track the language of the statute more closely:

> THE GRAND JURORS, in and for the County of Denton, State of Texas, duly organized, impaneled, and sworn as such, at the January Term, A.D., 2016, of the District Court of the 362nd Judicial District in and for said county and state, upon their oaths, present in and to said Court that VANDAMME JEANTY, who is hereinafter styled

4

defendant, on or about the 9th day of November, 2015, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there, with intent to harm or defraud another, and without the consent of Mary Stella, obtain, possess *or use* less than five (5) items of identifying information of Mary Stella, to-wit: name *and* date of birth, or social security number; against the peace and dignity of the State. [Emphasis added.]

After a hearing, the trial court granted the State's motion to amend over Jeanty's objection.

## 2. Applicable Law and Analysis

Jeanty grounds his argument in the language of Article 28.10 of the Texas Code of Criminal Procedure, which provides, in relevant part, as follows:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

. . . .

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Tex. Code Crim. Proc. Ann. art. 28.10(a), (c). Jeanty asserts that because the original indictment incorrectly listed "name" and "date of birth" as separate "item[s] of identifying information"—and therefore did not allege a valid offense under Penal Code Section 32.51—the State's amendment of the indictment to properly include "name and date of birth" as a single "item of identifying information" is the

5

equivalent of charging Jeanty with "an additional or different offense" and prejudiced his substantial rights. *See id.* art. 28.10(c). Jeanty's argument lacks merit.

Jeanty's argument rests on a faulty premise—that the original indictment did not state a valid offense. The original indictment alleged that Jeanty "obtain[ed] or possess[ed]" three "items of identifying information of Mary Stella" without her consent: her "name, date of birth, or social security number." Thus, even excluding the allegations concerning Mary's name and date of birth, the indictment still alleges all of the required elements of the charged offense: that Jeanty (1) obtained or possessed an "item of [Mary's] identifying information"—her social security number; (2) without Mary's consent; (3) with the intent to harm or defraud. *See* Tex. Penal Code Ann. § 32.51(b)(1); *Sanchez*, 536 S.W.3d at 921.

Relying on *Cortez*, Jeanty contends that a social security number, like a date of birth, must be paired with a name to constitute an "item of identifying information." *See* 469 S.W.3d at 607 n.13 (Richardson, J., concurring). However, Jeanty's reliance on *Cortez* for this proposition is misplaced. First, the footnote cited by Jeanty is from Justice Richardson's concurring opinion and therefore does not constitute binding precedent. *See, e.g., Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013) (noting that concurring opinions have only persuasive value); *Schultz v. State*, 923 S.W.2d 1, 3 n.2 (Tex. Crim. App. 1996) ("As a concurring opinion, *Lugo-Lugo* [*v. State*, 650 S.W.2d 72, 87 (Tex. Crim. App. 1983) (op. on reh'g) (Clinton, J. concurring),] is not binding precedent."). Second, while the footnote makes clear that, without more, a name

would not constitute an "item of identifying information," it does not explicitly address whether a social security number, standing alone, would be sufficient. *See Cortez*, 469 S.W.3d at 607 n.13 (Richardson, J., concurring). Third, and most significantly, even if *Cortez* could be read to support Jeanty's argument, it is distinguishable because the court applied a different version of Section 32.51 than is applicable here. As the majority opinion in that case makes clear, because the offense at issue was committed in 2010, the court applied the definition of "identifying information" contained in the then-effective version of Section 32.51. *Id.* at 599 n.2. That earlier version of the statute listed "name *and* social security number, date of birth, or government-issued identification number" as one category of "identifying information." *See* Act of May 19, 2011, 82d Leg., R.S., ch. 276, § 1, 2011 Tex. Gen. Laws 881, 881 (emphasis added). However, in 2011, the legislature amended Section 32.51(a)(1) "to move [s]ocial [s]ecurity number . . . into a separate, fifth category, leaving 'name and date of birth' alone in the first category." *Cortez*, 469 S.W.3d at 599 n.2. Thus, under the current version of the statute, "social security number" is set apart as a separate category of "identifying information." Tex. Penal Code Ann. § 32.51(a)(1)(E). Accordingly, even if a social security number, standing alone, did not constitute an "item of identifying information" under the earlier version of Section 32.51 being construed in *Cortez*, it clearly does so under the current version applicable here.

Because—contrary to Jeanty's assertion—the original indictment did, in fact, state a valid offense, the amended indictment did not charge Jeanty "with an additional or different offense."[2] *See* Tex. Code Crim. Proc. Ann. art. 28.10(c); *see also Flowers v. State*, 815 S.W.2d 724, 728 (Tex. Crim. App. 1991) (holding that for purposes of Article 28.10(c), "a different offense means a different statutory offense"); *State v. Jarreau*, 563 S.W.3d 477, 490 (Tex. App.—San Antonio 2018, pet. ref'd) (holding that amendment to indictment specifying the manner and means by which the defendant delivered a dangerous drug in violation of Section 483.042(a) of the Texas Health and Safety Code "did not charge a different or additional offense"). The amended indictment did not add a different statutory offense. *See Jarreau*, 563 S.W.3d at 490. Rather, both before and after the amendment Jeanty stood charged with the exact same offense—one count of fraudulently using or possessing identifying information arising from an incident occurring on November 9, 2015.[3]

---

[2]Having rejected Jeanty's contention that the original indictment did not state a valid offense, we need not address whether Article 28.10(c) applies to such situations. *Compare Byrum v. State*, 762 S.W.2d 685, 690–91 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding that Article 28.10(c)'s "prohibition against adding an offense or changing the offense [did] not apply . . . because the original information never alleged an offense"), *with Flowers v. State*, 785 S.W.2d 890, 892, 896 (Tex. App.—El Paso 1990) (disagreeing with *Byrum* and noting that "zero plus one equals one reflects an addition process to us"), *rev'd*, 815 S.W.2d 724 (Tex. Crim. App. 1991).

[3]Jeanty, citing *Jefferson v. State*, No. PD-0677-21, 2022 WL 2961846 (Tex. Crim. App. July 27, 2022), argues that the indictment's amendment was impermissible because "adding a count, even of the same statutory offense as a count already in the indictment, would constitute an additional offense." However, because the amended indictment did not add an additional count of fraudulently using or possessing

8

Nor did the amendment prejudice Jeanty's substantial rights. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c). In determining whether a defendant's substantial rights were prejudiced by an amended indictment, we ask whether the amendment gave the defendant adequate notice of the allegations or impaired his ability to prepare his defense. *See Flowers*, 815 S.W.2d at 729; *Hillin v. State*, 808 S.W.2d 486, 488–89 (Tex. Crim. App. 1991); *Jarreau*, 563 S.W.3d at 490. Here, Jeanty has not argued that the amendment caused him surprise or affected his ability to prepare a defense,[4] nor can

---

identifying information but merely combined two items of "identifying information" that Jeanty was alleged to have "use[d]" or "possess[ed]," *Jefferson* is distinguishable. *See id.* at *3–4.

[4]Jeanty argues that the amendment prejudiced his substantial rights because it denied him his constitutional right to be indicted by a grand jury. *See* Tex. Const. art. I, § 10. However, this is not the proper inquiry when determining whether a defendant's substantial rights were prejudiced under Article 28.10(c). *See Flowers*, 815 S.W.2d at 729; *Hillin*, 808 S.W.2d at 488–89; *Jarreau*, 563 S.W.3d at 490. In rejecting a similar argument that an amended indictment violated the appellant's constitutional rights because the grand jury had not reviewed it, one of our sister courts explained: "Article 28.10 is the implementing legislation of the amendment to Tex. Const. art. V, § 12, relating to defects in charging instruments. The constitutional amendment gave the Legislature the right to determine the contents, amendment, sufficiency, and requisites of indictments. Thus, the requisites of indictments now stem from statutory law alone." *Smith v. State*, 20 S.W.3d 827, 828 (Tex. App.—Texarkana 2000, pet. dism'd); *see also Gray v. State*, No. 05-20-00121-CR, 2022 WL 2900970, at *3 (Tex. App.—Dallas July 22, 2022, no pet.) (mem. op., not designated for publication) (clarifying that "error in amending an indictment . . . over appellant's objection is statutory, not constitutional" (citing *Dukes v. State*, 239 S.W.3d 444, 447 (Tex. App.—Dallas 2007, pet. ref'd))). Thus, we reject Jeanty's argument that an amendment that otherwise satisfies the requirements of Article 28.10 is nonetheless invalid because such an amendment violates the defendant's right to be indicted by a grand jury. Jeanty's argument proves too much; if we were to adopt his reasoning, virtually all amended indictments in felony cases would be unconstitutional unless they were reviewed and approved by a grand jury. We must decline Jeanty's invitation to, in

we see how it possibly could have. As noted above, the amended indictment alleged the same offense, concerned the same incident on November 9, 2015, and listed the same "item[s] of identifying information" as the original. The only differences were the combination of "name" and "date of birth" into a single "item of identifying information" and the addition of the verb "use" such that the amended indictment alleged that Jeanty "obtain[ed], possess[ed] or use[d]" Mary's identifying information. We cannot conclude that these minor changes—which were made more than two years before trial—impaired Jeanty's ability to prepare a defense. *See Jarreau*, 563 S.W.3d at 490; *cf. Valenti v. State*, 49 S.W.3d 594, 598 (Tex. App.—Fort Worth 2001, no pet.) (disregarding correction to date of offense in indictment, to which defendant's attorney objected on the day of trial, because defendant was neither surprised nor misled to his prejudice in preparing his defense).

Because the amendment to the indictment neither charged Jeanty with "an additional or different offense" nor prejudiced his "substantial rights," it was not improper. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c). Accordingly, we overrule Jeanty's first point.

---

effect, add an additional, extra-statutory procedural step to the amendment process governed by Article 28.10. Further, to the extent Jeanty asserts a separate constitutional appellate complaint, it has been forfeited because he did not raise a constitutional objection to the amendment in the trial court. *See* Tex. R. App. P. 33.1(a); *see also Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object.").

10

**B. <u>Points Two and Eight</u>: The Evidence Is Legally Sufficient**

In his second and eighth points,[5] Jeanty argues that the evidence is legally insufficient to support his conviction.[6] We disagree.

### 1. Standard of Review

When conducting an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine

---

[5]As noted above, many of Jeanty's points are interrelated. Where appropriate, we will address such interrelated points together. *See, e.g., Phillips v. State*, No. 02-16-00049-CR, 2016 WL 6519118, at *2 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication).

[6]In his eighth point, Jeanty actually asserts that the trial court erred by denying Jeanty's motion for a directed verdict of acquittal. However, such a complaint is treated as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

### 2. Hypothetically Correct Jury Charge

In determining whether the evidence is legally sufficient, we must compare the evidence produced at trial to "the essential elements of the offense as defined by the hypothetically correct jury charge." *David v. State*, No. PD-0307-21, 2022 WL 1548023, at *3 (Tex. Crim. App. May 11, 2022) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* The "law" as "authorized by the indictment" includes "the statutory elements of the offense . . . as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

12

In the present case, we must determine which indictment—the original indictment or the amended one—is the proper charging instrument for purposes of constructing the hypothetically correct jury charge. *See id.* Jeanty argues that because the indictment's amendment was erroneous, the hypothetically correct jury charge must be based upon the original indictment. However, having determined that the indictment was properly amended, we conclude that the amended indictment is the proper charging instrument upon which to base the hypothetically correct jury charge. *See Trevino v. State*, 470 S.W.3d 660, 663 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *cf. Curry*, 30 S.W.3d at 404 (concluding that because the indictment's amendment was erroneous, the hypothetically correct jury charge must be based on the original indictment).

### 3. The Elements of the Offense

As set forth above, the Texas Penal Code provides that "[a] person commits the offense of fraudulent use of identifying information if he: (1) obtains, possesses, transfers, or uses an item of identifying information of another person; (2) without the other person's consent; and (3) with the intent to harm or defraud." *Sanchez*, 536 S.W.3d at 921 (citing Tex. Penal Code Ann. § 32.51(b)(1)). The amended indictment in this case alleged that "on or about the 9th day of November, 2015," Jeanty "did then and there, with intent to harm or defraud another, and without the consent of Mary Stella, obtain, possess or use less than five (5) items of identifying information of Mary Stella, to-wit: name and date of birth, or social security number." Thus, in

13

order to convict Jeanty, the jury had to find beyond a reasonable doubt that he "obtain[ed], possess[ed] or use[d]" Mary's "name and date of birth" or "social security number" without her consent and "with the intent to harm or defraud another." *See Curry*, 30 S.W.3d at 404.

### 4. The State's Evidence

During the guilt–innocence phase of trial, the State called six witnesses and offered numerous exhibits, including surveillance camera footage and Nebraska Furniture Mart's pertinent business records, including receipts and credit account records.

The victim Mary, an attorney who has resided in Florida her entire life, testified that she first encountered Jeanty in 2012 while representing Bank of America in a civil lawsuit filed by Carline Merisier. Because Jeanty featured prominently in the lawsuit, Mary knew who he was, and one day she noticed him "lurking" and "following" her as she walked from her law office to the courthouse. Mary testified that she was not friends with Jeanty or Merisier and never gave them her personal information or authorized them to use it.

On November 8, 2015, a credit account in the name of "Mary Pascal," Mary's maiden name, was opened online through Nebraska Furniture Mart's website. The account listed Mary's address as 5014 Oregon Court, Grand Prairie, Texas (the Grand Prairie address), an address Mary had never visited. Indeed, Mary testified that she had

14

never been to Texas prior to this case. The account reflected Mary's employer as Xtreme Electronics Systems, a company she had never worked for.

To open an account on Nebraska Furniture Mart's website, an applicant must enter her name, social security number, address, date of birth, driver's license number, phone number, place of employment, and income information. Both the date of birth and social security number on the account matched Mary's. Although the account included her identifying information, Mary testified that she did not open the account and, in fact, had never even heard of Nebraska Furniture Mart prior to this case.

Casey McGregor, a loss-prevention assistant manager at Nebraska Furniture Mart, testified that because Nebraska Furniture Mart is a frequent fraud target, he has trained employees to notice signs of fraud. He explained that one such sign is when a customer purchases multiple high-end electronics on a newly opened account.

Dan Harrison, who worked at Nebraska Furniture Mart as a sales agent, testified that on November 9, 2015, he was working in the small electronics section where vacuum cleaners are sold. He sold a Dyson vacuum to a man who used the "Mary Pascal" account for the purchase.[7] The man signed the receipt, which prominently displayed the name "Mary Pascal" and the Grand Prairie address at the top.

---

[7]While Harrison acknowledged that he did not recall the particulars of this transaction, he explained that in order for a customer to purchase items on a store credit account, the customer would need to provide the sales agent—in this case Harrison—a name or phone number associated with the account.

The State offered both the receipt and surveillance video of the transaction into evidence. The time stamps of the video and the receipt match up, and the video shows a man resembling Jeanty walking out of the store with the vacuum a few minutes after the transaction. The vacuum was later recovered from Jeanty's vehicle after he was arrested.

That same day, two televisions were also purchased on the "Mary Pascal" account. Because, as noted above, the purchase of multiple high-end electronics on a newly opened account is a fraud indicator, McGregor was notified and took steps to verify the legitimacy of the account. McGregor called the phone number associated with the "Mary Pascal" account; a man answered; McGregor asked for Mary; and the man passed the phone to a woman. McGregor then researched the social security number associated with the account and determined that while the number belonged to someone named Mary Pascal, she lived in Florida, not Texas. McGregor then spoke with the actual Mary on the phone, which confirmed his suspicion that the "Mary Pascal" account was fraudulent. As a result, McGregor began coordinating with security staff to apprehend Jeanty in the customer pick-up area.

Jeanty and Merisier drove up to the customer pick-up area in a white Ford Expedition to collect the televisions. The vehicle did not have a front license plate, and in place of a back license plate was a piece of paper with numbers and letters written in marker. While Jeanty and Merisier waited in the customer pick-up area, Merisier got out of the vehicle and began walking aimlessly toward a busy intersection.

McGregor, posing as a worker in the customer pick-up department, loaded the televisions onto a flat and walked them to Jeanty's vehicle. He spoke with Jeanty, who confirmed that he was there to pick up the televisions. McGregor could see the vacuum from the earlier transaction in Jeanty's vehicle. After Jeanty signed for the televisions using the name "Pierre Pascal," McGregor detained him.

After being taken to the store's loss-prevention offices in handcuffs, Jeanty was not cooperative and would not give his name. Jeanty told McGregor that he had taken a laxative and needed to use the restroom. McGregor allowed him to do so but instructed him not to use his phone. While supervising Jeanty in the restroom, another loss-prevention officer named Brandon Barnes observed Jeanty texting while in the bathroom stall and directed him to stop several times. After Jeanty repeatedly ignored Barnes's instructions, Barnes entered the stall to stop Jeanty from using his phone. A scuffle ensued, and Jeanty's phone landed in the toilet. After Jeanty continued to resist and Barnes threatened to use his pepper spray, Jeanty exclaimed, "Go ahead, I'm ready to die." Barnes eventually escorted Jeanty back to the detention room and observed that Jeanty had not actually urinated or defecated while in the restroom.

Jeanty later told McGregor that he had not taken his medication, and an ambulance was called. A paramedic attempted to assist Jeanty, but Jeanty refused to answer any questions. Because Jeanty's vital signs were normal and he showed no signs of a medical emergency, the paramedic left.

Loss-prevention officers eventually tracked down Merisier and brought her to the detention room as well. While in the detention room with Merisier, McGregor called the phone number listed on the fake "Mary Pascal" account, and the phone in Merisier's pocket rang.

McGregor called the police, and Lieutenant Jason Stevens responded. Stevens spoke with Merisier and Jeanty, who were both uncooperative. Although Jeanty refused to give his name, Stevens was able to verify his identity by communicating with Mary, the victim. Mary sent Stevens Jeanty's mugshot, and Stevens was able to identify the man in custody as Jeanty based on the photograph.

Stevens's search of Jeanty's vehicle revealed not only the Dyson vacuum but also a bag containing mail. Two of the letters—one from State Farm Bank and one from Deluxe—were addressed to "Mary Pascal" at the Grand Prairie address. A third letter also reflected the Grand Prairie address and listed the addressee as "Frantzi Jeanty."

**5. Analysis**

Jeanty claims that the evidence is insufficient to prove that he fraudulently obtained, possessed, or used Mary's identifying information,[8] *see* Tex. Penal Code Ann. § 32.51(b)(1), because there is no evidence that Jeanty was the person who

---

[8]Because Jeanty does not challenge the consent or intent elements, we will limit our discussion accordingly. *See* Tex. R. App. P. 47.1 (indicating that an appellate court's opinion should be "as brief as practicable").

18

created the fraudulent "Mary Pascal" account or that he was in actual physical possession of Mary's identifying information. We disagree.

Viewed in the light most favorable to the verdict, the evidence—though largely circumstantial—is sufficient to support Jeanty's conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622; *see also David*, 2022 WL 1548023, at *3 ("Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction." (first citing *Jackson*, 443 U.S. at 324–25, 99 S. Ct. at 2792; and then citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013))). At trial, the State's evidence showed the following:

- Jeanty knew Mary from her representation of Bank of America in a civil lawsuit filed by Merisier, Jeanty's alleged partner in crime;

- On November 8, 2015, a fraudulent Nebraska Furniture Mart credit account was opened using Mary's identifying information, including her name, date of birth, and social security number—all of which were required to set up an account;

- The next day, November 9, 2015, Jeanty attempted to purchase a vacuum and two televisions on the fraudulent account; these transactions are verified by the store's business records and surveillance footage;

- At the time he attempted to pick up the televisions, Jeanty's vehicle had no front license plate and had a piece of paper with numbers and letters written in marker in lieu of a rear license plate;

- Jeanty signed for the televisions under the name "Pierre Pascal";

- Once detained, Jeanty was uncooperative; refused to provide his name; misled loss-prevention officers about needing to use the restroom and to

19

take medication; and exclaimed that he was "ready to die" after one of the loss-prevention officers threatened to use pepper spray if Jeanty continued to resist;

- When, after detaining Jeanty and Merisier, McGregor called the phone number listed on the fraudulent account, Merisier's phone rang;

- Lieutenant Stevens was able to identify Jeanty as the man apprehended in the store after receiving a copy of his mugshot from Mary, the victim; and

- When searching Jeanty's vehicle, police found not only the vacuum Jeanty had attempted to purchase on the fraudulent account but also two letters addressed to "Mary Pascal" at the Grand Prairie address.

Although there is no "smoking gun" evidence that Jeanty created the fraudulent account or physically possessed Mary's identifying information, given the overwhelming circumstantial evidence, a reasonable jury could determine that Jeanty obtained, possessed, or used Mary's identifying information. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. First, the lack of evidence that Jeanty physically possessed the information is unremarkable—and certainly not exculpatory—considering that the information used to set up the fraudulent account online may never have existed in physical form. *See Cortez*, 469 S.W.3d at 601 (recognizing "the elusive nature of identity theft in the digital age, which is not always tied to the possession of any tangible document" and pointing out that Section 32.51's legislative history makes clear that its focus is to target the "fraudulent use or possession of . . . identifying information . . . rather than . . . the use or possession of particular documents"). Moreover, because Jeanty knew Mary from a previous lawsuit

and attempted to purchase multiple items on the fraudulent account the day after it was opened, a reasonable juror could infer that Jeanty opened the account using Mary's identifying information.[9] However, such an inference is not even necessary to uphold Jeanty's conviction. Regardless of whether Jeanty was the one who set up the account online, the evidence clearly shows, at a minimum, that Jeanty, in effect, used Mary's information without her consent when he attempted to purchase multiple items on the fraudulent account. *Cf. Ogunlana*, 2012 WL 5873543, at *3 (concluding that even though the State could not definitively prove that appellant had supplied the victim's information to Dell in connection with an online order, "a reasonable jury could determine that [appellant] 'used' [the victim's] information without his consent when she ordered a computer, did not pay for it, and did not attempt to correct Dell's billing error"). Further, Jeanty's other suspicious behavior at the store—including using the name "Pierre Pascal" on the pick-up receipt for the televisions, using a fake paper license plate, and refusing to cooperate with store personnel or the police after being detained—supports the jury's determination that Jeanty acted with fraudulent intent.

---

[9]Though evidence that Jeanty "use[d]" Mary's identifying information would be sufficient to support his conviction, *see Ogunlana v. State*, No. 01-11-00573-CR, 2012 WL 5873543, at *3 (Tex. App.—Houston [1st Dist.] Nov. 21, 2012, no pet.) (mem. op., not designated for publication), in order to have used Mary's identifying information to set up the account, Jeanty logically would have also needed to possess it, and such possession would, in turn, necessitate his having obtained the information in the first place.

21

In sum, a rational factfinder, having considered the evidence presented at trial, could have found beyond a reasonable doubt that Jeanty, with the intent to harm or defraud, "obtain[ed], possesse[d], . . . or use[d]" Mary's identifying information without her consent. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* Tex. Penal Code Ann. § 32.51(b)(1). Accordingly, we overrule Jeanty's second and eighth points.

## C. <u>Points Three, Four, Five, and Fourteen</u>: The Jury Charge Was Proper

In his third, fourth, fifth, and fourteenth points, Jeanty argues that the jury charge was erroneous because (1) it improperly tracked the amended indictment rather than the original indictment; (2) it failed to set forth all of the essential elements of the offense; (3) it did not require a unanimous jury verdict; and (4) it did not define the phrase "element of the offense." All of Jeanty's complaints about the jury charge are meritless.

### 1. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* However, if the charge is erroneous, then we must decide whether the appellant was harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *see Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The standard of review to be applied in assessing harm depends on whether the defendant preserved the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If a

22

defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* But in the absence of a timely objection, the record must show "egregious harm." *Id.*

### 2. The Jury Charge Properly Tracked the Amended Indictment

In his third point, Jeanty argues that the jury charge was erroneous because it incorrectly tracked the amended indictment. This argument is premised on Jeanty's previously addressed contention that the trial court erred by granting the State's motion to amend the indictment.[10] Having determined that the indictment's amendment was proper, we reject Jeanty's argument that the jury charge should have tracked the original—not the amended—indictment.

We overrule Jeanty's third point.

### 3. The Jury Charge Set Forth the Essential Elements of the Offense

In his fourth point, Jeanty asserts that the jury charge failed to set forth all of the elements of the offense because it improperly listed "social security number" as a separate "item of identifying information." Jeanty, relying on *Cortez*, 469 S.W.3d at 600, 607 n.13, contends that a social security number must be paired with a name to constitute an "item of identifying information." *See* Tex. Penal Code Ann. § 32.51(a)(1). However, as detailed above,[11] *Cortez* is distinguishable because it involved an earlier version of Section 32.51(a)(1). *See* 469 S.W.3d at 599 n.2. As the

---

[10] *See supra* Section II.A.1–2.

[11] *See supra* Section II.A.2.

*Cortez* court itself recognized, the current version of the statute, which we must apply here, lists "social security number"—untethered from "name"—as a separate "item of identifying information." *Id.* Thus, the jury charge's listing of "social security number" as a separate "item of identifying information" aligns with the current version of Section 32.51(a)(1) and is not erroneous. *See* Tex. Penal Code Ann. § 32.51(a)(1).

We overrule Jeanty's fourth point.

### 4. There Was No Jury Unanimity Error in the Jury Charge

In his fifth point, Jeanty argues that the jury charge was erroneous because it allowed for the possibility of a conviction on a non-unanimous verdict. This argument lacks merit.

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (citing *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008)). This means that a jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). However, this does not mean that the jury must unanimously find that the defendant committed the crime in one specific way or even with one specific act. *Landrian*, 268 S.W.3d at 535 (citing *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006)).

There are several ways in which non-unanimity issues arise. The Texas Court of Criminal Appeals has recognized three situations in which non-unanimity may result

when the jury charge fails to properly instruct the jury. *Cosio*, 353 S.W.3d at 771. "First, non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed." *Id.* at 771–72 (citing *Ngo*, 175 S.W.3d at 747). "Second, non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id.* at 772. "[T]hird and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute." *Id.* (citing *Ngo*, 175 S.W.3d at 747–48).

Jeanty contends that his case falls within the third scenario. Relying on *State v. Donaldson*, 557 S.W.3d 33 (Tex. App.—Austin 2017, no pet.), in which the Third Court of Appeals concluded that for double-jeopardy purposes the "allowable unit of prosecution" under Section 32.51 is "each separate item of identifying information," *id.* at 46, Jeanty argues that because he was charged with "obtain[ing], possess[ing], or us[ing]" two categories of Mary's identifying information—her "name and date of birth" and her "social security number"—he was actually charged with two separate offenses. Thus, Jeanty reasons, the charge allowed for the possibility of a conviction on a non-unanimous verdict because it instructed the jury to find Jeanty guilty if it found beyond a reasonable doubt that he "obtained or possessed or used" Mary's "name and date of birth, *or* [s]ocial [s]ecurity [n]umber." [Emphasis added.] According

25

to Jeanty, because the charge did not require the jury to differentiate between the two separate statutory offenses and because some jurors may have found that Jeanty only possessed Mary's name and date of birth and others may have found that he only possessed her social security number, the charge created a non-unanimity issue.[12]

Jeanty's argument rests on a flawed foundation. Contrary to Jeanty's claim, he was charged with a single offense, not two. Notwithstanding our sister court's holding in *Donaldson*, which we decline to extend beyond the double-jeopardy context, it is clear that Jeanty's act of "obtain[ing], possess[ing], . . . or us[ing]" Mary's "name and date of birth" and "social security number" constitutes "a single and discrete incident"—and thus a single offense—for purposes of jury unanimity. *See Cosio*, 353 S.W.3d at 771. The record shows that Mary's name, date of birth, *and* social security number were needed to set up the fraudulent account. Thus, purchasing or attempting to purchase items on the account would necessarily involve the use of both items of identifying information alleged in the indictment. The State did not allege that Jeanty obtained, possessed, or used Mary's name and date of birth on Day X and then obtained, possessed, or used her social security number on Day Y. *See id.* at 772 ("[N]on-unanimity may occur when the State charges one offense and presents evidence of an offense, *committed at a different time*, that violated a different provision of

---

[12]Jeanty also argues that the charge was erroneous because it "counted [Mary's] *social security number* alone as an item of 'identifying information.'" However, as discussed above, "social security number" is a proper "item of identifying information" under the current version of Section 32.51(a)(1) applicable to this case. *See supra* Sections II.A.2., II.C.3. Thus, we need not address this argument again here.

the same criminal statute." (emphasis added)). Rather, Jeanty was charged with using both together in a "single and discrete incident." *See id.* at 771. Because both items of identifying information were part and parcel of the same criminal incident, the jury charge did not allow for the possibility of a conviction on a non-unanimous verdict.

We overrule Jeanty's fifth point.

### 5. The Omission of the Definition of the Phrase "Element of the Offense" Did Not Render the Jury Charge Erroneous

In his fourteenth point, Jeanty argues that the jury charge was erroneous because it did not include the statutory definition of the phrase "element of the offense." This argument is meritless.

The trial court is required to give the jury a written charge that, among other things, "set[s] forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14. The "law applicable to the case" includes "statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *see Watson v. State*, 548 S.W.2d 676, 679 n.3 (Tex. Crim. App. 1977) ("The trial court should always include the statutory definitions in its jury instructions where applicable."). Trial courts have "broad discretion" in submitting proper definitions and explanatory phrases to aid the jury. *Nava v. State*, 379 S.W.3d 396, 420 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 415 S.W.3d 289 (Tex. Crim. App. 2013); *Deener v. State*, 214 S.W.3d 522, 529 (Tex. App.—Dallas 2006, pet. ref'd); *see Shipp v. State*, 331 S.W.3d 433, 444 (Tex. Crim. App. 2011) (Meyers, J., concurring).

27

Nonetheless, because the jury is the ultimate trier of fact, the charge may not advise the jury on the specific application of the facts to the law such that it comments on the weight of the evidence. *Watts v. State*, 99 S.W.3d 604, 609–13 (Tex. Crim. App. 2003).

Even if we were to assume—without deciding—that the trial court erred by failing to include the statutory definition of "elements of the offense" in the jury charge, such error would not warrant reversal. Because Jeanty did not object to the jury charge's lack of a definition of "element of the offense," the error is only reversible if the record shows "egregious harm." *See Almanza*, 686 S.W.2d at 171. "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777. Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172).

Here, the record does not show egregious harm. While the jury charge did not define "elements of the offense," it set out all of the elements of fraudulent use of identifying information, defined terms within those elements, and applied those elements to the facts.[13] Moreover, during voir dire, the State explained to the jurors

---

[13]The application paragraph clearly explained the elements that the jury needed to find in order to convict Jeanty:

that it carried the burden to prove the elements, explained the elements, and even listed the elements on a board. Jeanty's attorney also explained to the jurors that the State was required to prove all of the elements beyond a reasonable doubt and asked them if they understood that all of the elements needed to be proven. Both sides further discussed the elements and the State's burden to prove them beyond a reasonable doubt during closing arguments. Thus, the jury was well-schooled regarding the elements that the State needed to prove, and there is nothing in the record to suggest that they were confused by the lack of a definition of the phrase "elements of the offense" in the jury charge. Accordingly, the record does not show actual harm. *See Cosio*, 353 S.W.3d at 777 (clarifying that to be "egregious," harm must be actual, not merely theoretical).

We overrule Jeanty's fourteenth point.

## D. <u>Points Six and Seven</u>: The Evidence Showed "Mary Stella" and "Mary Pascal" Were the Same Person

In his sixth and seventh points, Jeanty seeks the reversal of his conviction on the basis that the indictment alleged that the victim's name was "Mary Stella" but the

---

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of November, 2015, in Denton County, Texas, the defendant, Vandamme Jeanty, did then and there, either acting alone or as a party with Carline Merisier, with the intent to harm or defraud another, and without the consent of Mary Stella, obtained or possessed or used less than five items of identifying information of Mary Stella, to wit: name and date of birth, or Social Security Number, then you will find the Defendant guilty. If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

29

evidence at trial showed that the name on the fraudulent account was "Mary Pascal." Jeanty argues that this variance prejudiced his substantial rights and rendered the State's evidence legally insufficient to support his conviction. These arguments are meritless.

Contrary to Jeanty's assertions in the trial court and on appeal, the indictment could contain either of the victim's known names. Indeed, Article 21.07 of the Texas Code of Criminal Procedure expressly provides that "[w]hen a person is known by two or more names, it shall be sufficient to state either name" in an indictment. Tex. Code Crim. Proc. Ann. art. 21.07.

Moreover, the evidence at trial made clear that "Mary Stella" and "Mary Pascal" were the same person. For example, as soon as the State called the victim as a witness, the following exchange occurred:

Q    Can you please introduce yourself?

A    Yes. My name is Mary Stella.

Q    Okay. What was your name before you got married?

A    Mary Pascal.

Q    So if we're talking about someone by the name of Mary Pascal or Mary Stella in this particular case, we're talking about you; is that correct?

A    That is correct.

Mary further testified that she was married in 2014 and that the fraudulent account reflected her maiden name. She pointed out that while representing Bank of America

30

in its civil lawsuit against Merisier in 2012, she was not yet married, and thus her name was still "Mary Pascal" when she first encountered Jeanty. This would explain why the fraudulent account reflected her maiden name.

Because there was evidence that Mary was known by the name alleged in the indictment, Jeanty's legal sufficiency argument fails. *See Blankenship v. State*, 785 S.W.2d 158, 159 (Tex. Crim. App. 1990). "If there is evidence that the person was known by the name alleged in the indictment, then the issue is raised and is properly left for the jury to determine." *Id.* at 160. Here, there was ample evidence that the victim was known as both "Mary Pascal" and "Mary Stella." Accordingly, the evidence was sufficient to support the allegation in the indictment. *See id.*

Jeanty's argument that the variance between the name alleged in the indictment and the name on the fraudulent account prejudiced his substantial rights is similarly unpersuasive. To prejudice a defendant's substantial rights, an indictment must fail to inform him of the charges sufficiently to allow him to prepare an adequate defense or subject him to the risk of being prosecuted later for the same offense. *Gollihar v. State*, 46 S.W.3d 243, 248–49 (Tex. Crim. App. 2001). There is no evidence of such prejudice in this case.

The record belies Jeanty's claim that the variance impaired his ability to prepare a defense. The State's discovery, which Jeanty's counsel confirmed she received prior to trial, clearly showed that "Mary Pascal" was the name reflected on the fraudulent account and contained an email between Mary and Lieutenant Stevens in which Mary

stated that her name was "Mary Pascal Stella" and which she signed "Mary Stella." Moreover, Jeanty never sought a continuance on the basis of unfair surprise regarding the victim's name. Indeed, there is no indication in the record that Jeanty did not know whose identifying information he was accused of fraudulently using or possessing or that he was misled by the allegation in the indictment that the victim's name was "Mary Stella" or surprised by the proof at trial. *See id.*

Nor has Jeanty shown that there is a risk that he will be prosecuted later for the same crime. *See id.* In his brief, Jeanty argues that he is at risk of being reprosecuted for the same offense with a new indictment alleging "Mary Pascal" as the victim. But because the record clearly shows that "Mary Stella" and "Mary Pascal" are the same person, no such risk is presented. *See Salazar v. State*, No. 14-99-01136-CR, 2001 WL 893809, at *5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2001, no pet.) (not designated for publication) (concluding that there was no risk of reprosecution where the indictment alleged that appellant sexually assaulted "Esperanza Quinonez," but the proof at trial showed that the victim's name was really "Esperanza Quinonez Alvarado"); *see also United States v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir. 1988) (stating entire record, not just indictment, may be consulted in protecting against double jeopardy).

We also reject Jeanty's argument that the variance was material because the victim's name is a statutory element of the offense.[14] As noted above, fraudulent use or possession of identifying information—the offense of which Jeanty was convicted—has three elements: that the defendant "(1) obtain[ed], possesse[d], transfer[red], or use[d] an item of identifying information of another person; (2) without the other person's consent; and (3) with the intent to harm or defraud." *Sanchez*, 536 S.W.3d at 921 (citing Tex. Penal Code Ann. § 32.51(b)(1)). Thus, the victim's particular name is not an element of the offense. The indictment properly identified the "other person" whose "identifying information" Jeanty was accused of "obtain[ing], possess[ing] or us[ing]" as "Mary Stella." *See* Tex. Code Crim. Proc. Ann. art. 21.07; *Blankenship*, 785 S.W.2d at 159 ("When a person is known by two or more

---

[14]In "sub-points" to his sixth and seventh points, Jeanty asserts that the victim's date of birth and social security number also should have been included in the indictment because they too are statutory elements of the charged offense. However, while Jeanty cites cases for the general proposition that an indictment must include a description of a "statutory element that is the gravamen of the offense," *see, e.g.*, *Byrd v. State*, 336 S.W.3d 242, 257 (Tex. Crim. App. 2011), he cites no caselaw requiring the victim's particular social security number and date of birth to be included in an indictment for fraudulent use or possession of identifying information, and we are unpersuaded by Jeanty's reasoning. Like the victim's particular name, her specific social security number and date of birth are not elements of the offense that must be included in the indictment. Further, from a practical standpoint, we believe that the best practice is to avoid putting the victim's sensitive data in a document of public record such as an indictment. *Cf. Bell v. State*, 155 S.W.3d 635, 639 n.3 (Tex. App.—Texarkana 2005, no pet.) (noting that because the pre-sentence investigation report often contains confidential information, "the better practice is to not admit the [report] into evidence.").

33

names, Art[icle] 21.07 allows the State to allege either name in the indictment."). This was all that was required.

We overrule Jeanty's sixth and seventh points.

## E. Points Nine and Ten: The Admission of State's Exhibits Four, Five, and Six

In his ninth and tenth points, Jeanty argues that the trial court erred by admitting State's Exhibits Four, Five, and Six because they were hearsay, were not business records, and were not authenticated. Jeanty's arguments regarding the admission of these exhibits are unpreserved, meritless, or both.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Even if a trial court improperly admits evidence, such an error generally does not warrant reversal unless it affects an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Improperly admitted evidence that did not

34

influence the jury or had but a slight effect on the verdict is harmless. *Id.* Further, a trial court's error in improperly admitting evidence may be rendered harmless if other evidence that proves the same facts as the inadmissible evidence is admitted without objection. *See Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003).

### 2. Exhibit Four

State's Exhibit Four is a fifteen-page packet containing documents that are automatically generated during a Nebraska Furniture Mart fraud investigation, including information about the fraudulent account, when the account was used, receipts of transactions involving the account, and screenshots of the store's website that was used to open the account. On appeal, Jeanty asserts that the trial court erred by admitting Exhibit Four because it is hearsay, the State did not lay the proper predicate under the business records exception, and it suffers from a complete lack of authentication. The State maintains that Jeanty failed to preserve his complaint about the admission of Exhibit Four for review. We will address this preservation issue before considering the merits of Jeanty's complaint.

To preserve a complaint for appellate review, the record must show that a specific and timely objection was made to the trial judge and that the judge ruled on the objection. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Smith v. State*, 256 S.W.3d 341, 343 (Tex. App.—San Antonio 2007, no pet.) (mem. op.). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the

opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). To satisfy this specificity requirement, "[t]he complaining party must have informed the trial judge what was wanted and why the party was entitled to it." *Lovill*, 319 S.W.3d at 691. An issue is not preserved "if the legal basis of the complaint raised on appeal varies from the complaint made at trial." *Id.* at 691–92; *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (admonishing that for error to be preserved, the appellant's "point of error on appeal must comport with the objection made at trial").

Here, Jeanty filed a pre-trial motion to suppress in which he complained about his arrest and requested the suppression of any statements made or items seized in connection therewith. While the motion contains a boilerplate catch-all request for the suppression of "[a]ny other matters that the Court finds should be suppressed upon hearing of this motion," it does not specifically reference Nebraska Furniture Mart's records or employees.

At the start of trial, the trial court held a hearing on Jeanty's motion to suppress. At the hearing, Jeanty specifically objected to the admission of various pieces of evidence, including videos, the ringing of Merisier's phone in the detention room, and the letters found in Jeanty's vehicle. Jeanty did not object when the State offered Exhibit Four into evidence at the hearing on the motion to suppress or at

36

trial. Rather, the only potential objection Jeanty raised to Exhibit Four is in the following statement near the conclusion of the suppression hearing:

> Also in terms of Mr. McGregor, Mr. McGregor does not have any personal knowledge and actually did not have any job-related roles related to the application for the online application for the credit in Ms. Pascal's name. And so I believe any testimony from Mr. [McGregor] should be inadmissible due to lack of personal knowledge regarding the application.
>
> He also has lack of personal knowledge regarding the transaction for the vacuum cleaner, as well as the two televisions. He was not involved at all. He was the loss prevention manager, and as such, he does not have the -- although the State is trying to show that he's the custodian of records, I believe he is not the custodian of records for these applications and [fifteen]-page packet. He has -- he was not involved with preparing any of this information, Your Honor.

Although Jeanty does not mention Exhibit Four by name, it seems evident from the context that his allusion to "these applications and [fifteen]-page packet" is a reference to Exhibit Four. The fact that the State subsequently argued for the admissibility of Exhibit Four at the close of the suppression hearing supports this interpretation.

Even if we assume that the above-quoted statement from the suppression hearing constitutes an objection to Exhibit Four's admission, the only grounds stated for the objection are that McGregor was not the custodian of the records and did not prepare the information contained therein. Thus, we will limit our analysis of Exhibit Four's admissibility to these grounds; none of Jeanty's other arguments have been

preserved. *See* Tex. R. App. P. 33.1(a); *Lovill*, 319 S.W.3d at 691–92; *Wilson*, 71 S.W.3d at 349.

McGregor was not required to be either the custodian or the creator of the information contained in Exhibit Four in order to serve as the sponsoring witness for its admission as a business record. *See* Tex. R. Evid. 803(6)(D); *Mitchell v. State*, 750 S.W.2d 378, 379 (Tex. App.—Fort Worth 1988, pet. ref'd); *see also Haq v. State*, 445 S.W.3d 330, 335 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding that "[t]he facts that [the sponsoring witness] was not an . . . employee at the time of trial and that he was not [the store's] records custodian" did not affect the admissibility of a receipt admitted as a business record); *Huff v. State*, 897 S.W.2d 829, 839 (Tex. App.—Dallas 1995, pet. ref'd) (stating that sponsoring witness does not have to be employee of company keeping record as long as he has personal knowledge of mode of preparing record). "[A] qualified witness need not have personal knowledge as to the contents of the records but rather he need only have personal knowledge of the mode of preparation of the records." *Mitchell*, 750 S.W.2d at 379. McGregor testified that he was "aware of how all of th[e] information [contained in Exhibit Four] is generated" and that he actually put together the packet that was ultimately admitted as State's Exhibit Four. Thus, he was a qualified witness. *See id.*

We overrule Jeanty's ninth point.

### 3. Exhibits Five and Six

State's Exhibit Five is the receipt for the televisions; State's Exhibit Six is the receipt for the vacuum cleaner. Jeanty argues that the trial court erred in admitting these receipts because they are hearsay and lack proper authentication. However, because the information contained in these receipts was properly admitted elsewhere, even if we were to assume—without deciding—that the admission of these receipts was improper, such error would not warrant reversal.[15] *See, e.g.*, *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence." (first citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); and then citing *Couchman v. State*, 3 S.W.3d 155, 160 (Tex. App.—Fort Worth 1999, pet. ref'd))). We have already ruled that the trial court properly admitted State's Exhibit Four,[16] which contained a copy of State's Exhibit Six. Moreover, Jeanty does not argue that the trial court erred by admitting

---

[15]While Jeanty objected to Exhibit Six at trial, he did not object to the admission of Exhibit Five. Because Jeanty's motion to suppress did not directly address the admission of these receipts, it would appear that Jeanty failed to preserve error regarding the admission of Exhibit Five. Because we overrule Jeanty's argument concerning Exhibit Five's admission on the merits, we need not address this preservation issue. *See, e.g.*, *Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (expressly declining to decide whether an objection was required to preserve error on an issue because it could be overruled on the merits); *Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 n.4 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) ("Because we overrule this point of error on the merits, we do not address whether error was preserved.").

[16]*See supra* Section II.E.2.

State's Exhibit Nineteen, which—like Exhibit Five—is a receipt for the purchase of the televisions. Exhibit Nineteen is the customer pick-up receipt and contains essentially the same information as Exhibit Five.[17] Thus, the admission of Exhibits Five and Six was not reversible error. *See Matz*, 21 S.W.3d at 912.

We overrule Jeanty's tenth point.

## F. <u>Point Eleven</u>: The Phone Ring Was Admissible

In his eleventh point, Jeanty argues that the trial court erred by admitting evidence that Merisier's phone rang when McGregor called the number listed on the fraudulent account because the evidence was hearsay and not authenticated. Jeanty's argument is meritless.

### 1. Evidence of the Phone Ring

State's Exhibit Two is a video of the loss-prevention detention room at Nebraska Furniture Mart in which Jeanty and Merisier were detained. McGregor testified that the video was a fair and accurate depiction of the detention room. At one point during the video, McGregor makes a phone call, a cell phone rings, and Merisier looks down toward her pants. When asked about the incident, McGregor testified as follows:

---

[17]In addition to the transactional information contained in Exhibit Five, Exhibit Nineteen contains a description of the vehicle that will pick up the televisions and also reflects the false printed name and signature of "Pierre Pascal" provided by Jeanty when he picked up the televisions.

I called the phone number that was placed onto the credit account. The 817 phone number that was used to open the account.

. . . .

. . . Right when I dialed the number, it appeared that there was a noise coming from [Merisier's] pocket. It sounded like a cell phone.

McGregor also testified that the number he dialed was the same number he had previously called during his investigation when a male answered and then handed the phone to a woman.

## 2. The Phone Ring Is Not Hearsay

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). The rules of evidence define "statement" as "a *person's* oral or written verbal expression, or nonverbal conduct that a *person* intended as a substitute for verbal expression" and "declarant" as "the *person* who made the statement." Tex. R. Evid. 801(a)–(b) (emphasis added). As a machine, Merisier's cell phone cannot itself be a "declarant" for purposes of the hearsay rule; thus, the ring is not hearsay.[18] *See id*;

_____

[18]Rule 901(b)(6) of the Texas Rules of Evidence and the cases cited by Jeanty regarding the admissibility of telephone conversations and text messages are inapposite. Evidence of a phone ring is fundamentally different from evidence of a recorded conversation between two people because unlike a phone ring, a text or phone conversation necessarily contains "a person's oral or written verbal expression" and thus one or more "statement[s]" made by a "declarant." *See* Tex. R. Evid. 801(a)–(b); *cf. Murray v. State*, 804 S.W.2d 279, 284 (Tex. App.—Fort Worth 1991, pet. ref'd) (admonishing that "it would be incorrect to assume that a hearsay problem is present *anytime* a machine 'talks,' transmits data, or otherwise communicates information" and clarifying that "[m]echanical devices . . . are not persons and cannot be 'declarants.'

41

*Nguyen v. State*, No. 05-20-00241-CR, 2022 WL 3714494, at *8 (Tex. App.—Dallas Aug. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("The black box of appellant's vehicle is a computer and, by definition, cannot be a declarant for purposes of the rule against hearsay." (citing *Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (en banc))). Nor does McGregor's in-court testimony concerning the number he dialed and his observations of what occurred in the detention room afterward constitute hearsay. *See* Tex. R. Evid. 801(d); *cf. Thompson v. State*, No. 12-03-00014-CR, 2003 WL 22839810, at *4 (Tex. App.—Tyler Nov. 26, 2003, pet. ref'd) (mem. op., not designated for publication) (holding officer's commentary on the audio portion of a videotape depicting his pursuit of the appellant was hearsay "because the observations *were not made by [the officer] while testifying at trial*" (emphasis added)). Because the evidence of the phone ring was not hearsay, the trial court did not abuse its discretion by admitting it.[19]

We overrule Jeanty's eleventh point.

___

But they can serve as vehicles for storing or transmitting 'statements' made by a 'person.'" (quoting David A. Schlueter, *Hearsay—When Machines Talk*, 53 Tex. Bar J. 1135 (1990))).

[19]In any event, given the abundance of other evidence connecting Jeanty to the offense, any error in the admission of evidence concerning the phone ring would be harmless. *See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

**G. Point Twelve: The Law of Parties Instruction Was Harmless**

In his twelfth point, Jeanty argues that the trial court's law of parties instruction was erroneously given because the evidence was legally insufficient to support party liability. However, even if we were to assume—without deciding—that the trial court's instruction regarding party liability was erroneous, any such error would be harmless.

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

A law of parties instruction is appropriate when the evidence shows that the defendant's conduct alone was not sufficient to prove the offense but was dependent on the conduct of another. *Brown v. State*, 716 S.W.2d 939, 944 (Tex. Crim. App. 1986). Such an instruction is not required if the defendant's conduct alone would be sufficient to sustain a conviction. *Id.* A law of parties instruction "is permissible if the evidence raises both the theory that the defendant did the act charged and the theory that another person participated with [the] defendant in doing that act." *Id.* (quoting

43

Percy Foreman & Luther E. Jones, Jr., *Submitting Law of Parties in a Texas Criminal Prosecution*, 33 Baylor L. Rev. 267 (1981)).

In the present case, it is unnecessary for us to determine whether the trial court erred in submitting an instruction on the law of parties because such an instruction is harmless in situations where the evidence clearly supports a defendant's guilt as a principal actor. *See Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999); *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999). Having already determined that the evidence was sufficient to support Jeanty's conviction as a principal actor,[20] we conclude that any error concerning the law of parties instruction was harmless. *See Cathey*, 992 S.W.2d at 466.

We overrule Jeanty's twelfth point.

## H. Point Thirteen: The Admission of State's Exhibits Twelve-A, Thirteen, and Fourteen

In his thirteenth point, Jeanty argues that the trial court erred by admitting State's Exhibits Twelve-A, Thirteen, and Fourteen because they were the fruits of an unlawful search and seizure. Jeanty's argument lacks merit.

### 1. Applicable Law and Standard of Review

Under the Fourth Amendment, "a warrantless search is *per se* unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017). "The automobile exception allows for the warrantless search

---

[20]*See supra* Section II.B.

of an automobile 'if it is readily mobile and there is probable cause to believe that it contains contraband.'" *Id.* (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009)).

"Probable cause exists where the facts and circumstances known to law enforcement officers are 'sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Id.* at 599–600 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1311 (1949)). Probable cause also requires "a 'fair probability' of finding inculpatory evidence at the location being searched." *Id.* at 600 (quoting *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008)). "An officer's observation of contraband or evidence of a crime in plain view inside an automobile can be used to establish probable cause to seize the contraband or evidence." *Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.—Amarillo 2014, no pet.) (citing *Dahlem v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet. ref'd)). Further, when an officer has "probable cause to search for contraband in a car, it is reasonable . . . to examine packages and containers without a showing of individualized probable cause for each one." *Wyoming v. Houghton*, 526 U.S. 295, 302 , 119 S. Ct. 1297, 1301 (1999).

When reviewing a trial court's ruling on a motion to suppress, we "must view the evidence in the light most favorable to the trial court's ruling." *Marcopoulos*, 538 S.W.3d at 600 (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). Applying a bifurcated standard of review, "[w]e will afford 'almost total deference' to

a trial court's express or implied 'determination of historical facts' and review *de novo* 'the court's application of the law of search and seizure' to those facts." *Id.* (quoting *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)).

### 2. Lieutenant Stevens's Search of Jeanty's Vehicle

At the pre-trial hearing on Jeanty's motion to suppress, Lieutenant Stevens testified that when he arrived at Nebraska Furniture Mart on November 9, 2015, McGregor had detained Jeanty and Merisier. After arresting them for fraud, Stevens went to the customer pick-up area where Jeanty's vehicle was parked. Stevens testified that the fraudulently purchased Dyson vacuum was clearly visible through the vehicle's windows. Having observed the fraudulently obtained vacuum inside the vehicle, Stevens believed that he had probable cause to search it for other evidence of fraud. Also, given the location of the vehicle, he was concerned that a friend or family member with an extra key could come and drive the vehicle away if he did not search it immediately.

During his search, Stevens observed a drawstring bag that appeared to have a laptop in it; because computers are commonly used to open fraudulent accounts, he searched the bag. In the bag, he found two letters addressed to "Mary Pascal" at the Grand Prairie address (State's Exhibits Thirteen and Fourteen) and a letter addressed to "Frantzi Jeanty" at the Grand Prairie address (State's Exhibit Twelve-A).

### 3. Analysis

The trial court did not err by admitting State's Exhibits Twelve-A, Thirteen, and Fourteen because the warrantless search of Jeanty's vehicle fell under the automobile exception. *See id.* at 599. That the vehicle was "readily mobile" is not in doubt as Jeanty had just driven it to the customer pick-up area not long before the search took place. *See Keehn*, 279 S.W.3d at 336 (holding defendant's use of van days before search demonstrated that it was "readily mobile"). Further, because Stevens observed the fraudulently obtained vacuum in the vehicle, he had probable cause to search it for other contraband or evidence. *See Barnes*, 424 S.W.3d at 225. This probable cause extended to the bag containing the letters. *See Wyoming*, 526 U.S. at 302, 119 S. Ct. at 1301. Because the automobile exception applies, the search was lawful, and the trial court did not err by admitting State's Exhibits Twelve-A, Thirteen, and Fourteen.[21]

We overrule Jeanty's thirteenth point.

## I. <u>Point Fifteen</u>: No Cumulative Harm

In his fifteenth point, Jeanty asserts that the cumulative effect of all the complained-of errors warrants reversal of the trial court's judgment of conviction. Having overruled Jeanty's first fourteen points, we likewise overrule his fifteenth point. *See Abel v. State*, No. 02-18-00051-CR, 2020 WL 5048078, at *36 (Tex. App.—

---

[21]In any event, given the abundance of other evidence, even if we were to conclude that the admission of these exhibits was improper, such error would be harmless. *See* Tex. R. App. P. 44.2(b); *Solomon*, 49 S.W.3d at 365.

Fort Worth Aug. 27, 2020, no pet.) (per curiam) (mem. op., not designated for publication) (holding that because the court had overruled appellant's other appellate issues, his "cumulative-error complaint lacks merit because there is no error to cumulate"); *Bell v. State*, No. 02-18-00244-CR, 2019 WL 1967538, at *9 (Tex. App.—Fort Worth May 2, 2019, pet. ref'd) (mem. op., not designated for publication) ("Bell argues that even if each of his previous points do not constitute harm sufficient for reversal, their cumulative effect does, undermining the fundamental fairness of the proceedings. But his individual points either do not demonstrate reversible error or do not show that he was harmed. Therefore, there is no error to cumulate."); *Baker v. State*, No. 03-18-00240-CR, 2019 WL 1646260, at *7 (Tex. App.—Austin Apr. 17, 2019, no pet.) (mem. op., not designated for publication) ("Here, Baker's cumulative-error contention lacks merit because we have concluded, as to his preserved appellate issues, that one complained-of error was harmless and that there was no error as to the remaining complaints.").

### III. Conclusion

Having overruled all of Jeanty's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:

48